JACKSON, *ex dem.* BEEKMAN AND OTHERS, *against* HAVILAND.

THIS was an action of ejectment for land in *Queensbury,* in the county of *Washington,* which was tried at the *Washington* circuit, in *June,* 1813.

The plaintiff claimed under the patent of *Kayaderosseras,* to *John Tatham,* and 12 others, dated *November* 2, 1708. The share of *John Tatham* passed, by his will, to his wife, *Mary Tatham,* who, on the 13th of *October,* 1715, conveyed the same to *Elias Boudinot,* who, on the 1st of *March,* 1717, conveyed to *George Clark,* from whom it descended to his heir, *George Clark,* the younger, prior to the year 1768. On the 14th of *March,* 1768, *George Clark,* the younger, conveyed the same to *Dirck Lefferts* and *Peter Remsen;* in 1771, partition was made of the patent of *Kayaderosseras,* by which it appeared that lot No. 13., in the 25th allotment, fell to the share of *John Tatham :* and by deed of partition between *Lefferts* and *Remsen,* dated the 18th of *May,* 1771, lot No. 1., in the subdivision of lot No. 13., was conveyed to *Lefferts,* in severalty, of whom the lessors of the plaintiff are the heirs at law. The defendant was in possession of about one hundred acres in lot No. 1., of lot No. 13., in the 25th allotment of the *Kayaderosseras* patent.

In 1788, or 1789, one *John Eddy* was in possession of the premises in question, on whom, as tenant in possession, a declaration in ejectment was served, in which *Dirck Lefferts* was the lessor of the plaintiff. A default was entered therein against the casual ejector, on the 7th of *May,* 1790. The demise in the declaration was laid on the 10th of *May,* 1788, for fourteen years, and the judgment was signed on the 27th of *May,* 1811.

Where a person having recovered a judgment in ejectment, neglects to enforce it within the period laid in his demise, his right of entry under that judgment is altogether gone; and if there have been an adverse possession for 20 years, during which such judgment was recovered, it will not avail him to take the case out of the statute of limitations.

NEWYORK,       The defendant claimed the premises under the patent of
May, 1816.   *Queensbury* to *Jacob Haviland*, and others, dated the 20th of *May*,
JACKSON      1762 ; and by a partition of the patent, dated in *November*, 1762,
v.           lots No. 102. and 42. were conveyed to *Jacob Haviland*.  In
HAVILAND.    1765 *Asaph Putnam* took possession of lot No. 102., containing
250 acres, (of which the premises claimed by the plaintiff, as
within the *Kayaderosseras* patent, are part,) under *Jacob Havi-
land*, and continued in possession twelve years, until 1777, when
he was driven off, with the rest of the inhabitants, by the inva-
sion of *Burgoyne's* army.  Whilst *Putnam* was in possession, he
built a log house and barn ; there were 150 acres enclosed, and
40 or 50 acres cultivated.  *Abraham Wing* succeeded to the
possession, under a lease from *Haviland*; and *Henry Martin*
next came into possession, in *September*, 1784, under a lease
from *Moses Sage*, the son-in-law and agent of *Haviland*, and
continued until *April*, 1787, when *John Eddy* came into posses-
sion.  On the 6th of *July*, 1786, *Haviland* conveyed all his
right in the *Queensbury* patent to *Moses Sage*, and *Sage*, on the
14th of *July*, 1787, conveyed lot No. 102. to *John Eddy*, who,
on the 6th of *November*, 1794, conveyed the same to the defend-
ant.

The judge directed the jury to find a verdict for the defend-
ant, which they, accordingly, did.

*J. Emott*, for the plaintiff, contended, that the effect of the
recovery in the former action of ejectment, was to destroy the
continuity of possession, and to give the title to the plaintiff for
14 years.  If so, then there is no adverse possession on the
part of the defendant.  The former ejectment related to the
same property, and was against *Eddy*, under whom the defend-
ant holds.  That judgment gave the plaintiff, as against *Eddy*
and those claiming under him, a term of 14 years from 1790.  If
a single link in the chain of possession be broken, the whole
effect of it is defeated, as it regards the statute of limitations, and
there must be a new commencement of possession.  Though
the record was not made up until long after, owing to the negli-
gence of the plaintiff's attorney, the judgment could not be con-
sidered as abandoned.

A judgment of a court, directly on a point before them, is a
conclusive bar.  The merits of it can never be overhaled, ex-

cept by writ of error.* In proceedings *in rem,* or real actions, the judgment is conclusive on the right of property.† For example, a judgment by default, in a *common recovery,* vests the property absolutely in the common recoverer.‡ A recovery in an action of ejectment, by default, or after verdict, is the same thing; it is now a proceeding *in rem,* the thing only, the term, being recovered, not the mesne profits.§

After judgment in ejectment the plaintiff may enter.‖ He may, before a writ of possession is executed, maintain an action for the *mesne* profits. He may, before possession, sell his right, without being guilty of champerty. In an action for the mesne profits, the recovery in ejectment is conclusive as to the right of possession. So that, in the eye of the law, the judgment gives to the plaintiff the possession itself.**

*Skinner,* and *Woodworth,* contra, insisted, 1. That the plaintiff had not shown a title. When *Clark* conveyed to *Remsen* and *Lefferts,* and when *Remsen* conveyed to *Lefferts, Putnam* was in possession, claiming under the *Queensbury* patent. The deeds, therefore, were void for champerty.††

2. If the lessors of the plaintiff ever had a legal title, it is lost by the adverse possession of those under whom the defendant claims for more than 20 years. It is admitted that there has been no actual possession by the plaintiff's lessors for above 40 years. To prevent the operation of the statute of limitations, there must be an actual entry, so as to destroy the continuity of possession.‡‡ There must be an actual entry within the 20 years. The confession of lease, entry, and ouster, when there has been a nonsuit, will not prevent the operation of the statute. Where the statute once commences to run, it is not prevented by any intervening circumstance, as bankruptcy, coverture, &c.§§

In an action for mesne profits, the plaintiff must show that the writ of possession has been executed, or that he has obtained the actual possession.‖‖ After a judgment by default, the practice is to produce the judgment, and prove the writ of possession executed.*** It is true, where the defendant has appeared, and confessed lease, entry, and ouster, that is not necessary; but in case of a judgment by default, which is the present case, the writ of possession executed must be produced.††† It would be absurd to allow the plaintiff, in an action of trespass, to recover without showing an actual possession.

NEW YORK,
May, 1816.

JACKSON
v.
HAVILAND.

* 2 *Burr.* 1009.
*Co Litt* 39. *a.*
106. *a.*
† *Booth.* 71   2
*Bl. Rep.* 361.
‡ 2 *Bl. Com* 357.
§ *Goodtitle* v.
*Tonlbs,* 3 *Wils.
Rep* 118—120.
‖ 1 *Burr.* 88.

** 1 *Johns Cas.*
283. 1 *Burr* 88,
89   2 *Burr* 668.
3 *Johns Rep.*
483   9 *Vin Ab-*
353   p. 3   1
*Salk* 258.   3
*Wils.* 120 *Runn.*
*on Eject.* 400.

†† 1 *Johns. Rep.*
345.   9 *Johns.
Rep.* 57.

‡‡ 4 *Johns. Rep.*
390.

§§ *Esp. Dig.* 148,
1 *Str.* 556   1
*Johns Rep* 176.
3 *Mass. Rep.* 263.
3 *Binney's Rep,*
385.
‖‖ 2 *Burr.* 665.

*** *Runn. on*
*Eject.* 157.   2
*Cromp Pr.* 222.

††† *Bull N. P.*
87   1 *Impey's*
*Pr.* 428.   2 *Sel-*
*lon,* 225.

NEWYORK,
May, 1816.

JACKSON
v.
HAVILAND.
* 3 Johns. Rep.
481.
† 2 Johns. Rep.
369. 11 Johns.
Rep. 461.

‡ 3 Caines' Rep.
197.

In *Baron* v. *Abeel*,* and in *Benson* v. *Matsdorf*,† the defendant, after the recovery, had surrendered the possession.

If the plaintiff had taken possession under the judgment, still the defendant might, the next day, have brought his action to recover back the possession. If there were no previous title in the lessors of the plaintiff, what is to be the effect of the judgment?

In *Jackson*, ex dem. *Frost*, v. *Horton*,‡ in which the limitation of five years, under the act of the 28th of *March*, 1795, was set up in bar after the ejectment, the defendant died before trial, and after the five years had expired, and another action was immediately brought; though the question was not decided, the court being equally divided, yet two of the judges (*Livingston*, J., and *Spencer*, J.) were of opinion, that the act was to be taken according to its terms, and that the plaintiff could not recover; the other judges thought the case within the spirit and equity of the exceptions.

The 3d section of our statute (sess. 24. c. 183.) declares, that no entry shall be made on lands, but within 20 years after the title accrued; and that no claim, or entry, shall be sufficient, within the meaning of the act, unless an action shall be commenced thereon, within one year after making the entry, and prosecuted with effect; and, by the 5th section, in case of the reversal of a judgment, the plaintiff must commence a new action within one year after the reversal. It seems to be the meaning of the act, that the suit should be commenced in one year, its object being to make parties vigilant in regard to their rights. Here there was a lapse of 22 years before the suit was brought.

*Emott*, in reply, said that the statute of champerty did not apply to this case.

Again, the earliest commencement of adverse possession was in 1765; from that time to 1790, when the ejectment was commenced, deducting seven years for the period of the revolutionary war, there were only 18 years. The demise was laid in 1788, for 14 years, and, until after the end of that term, the statute would not begin to run. It makes no difference that the judgment was not perfected, or roll signed, until 1811. The roll is only evidence of the judgment by default, in 1790,

The books of practice, it is true, differ as to the necessity of executing a writ of possession, and the reason of the difference it is not easy to understand. The effect of a judgment by default is precisely the same as that of a judgment after appearance. In the one case, the defendant, by his default, admits the right of the plaintiff. In the other, it is found for him by the verdict of a jury. After the term has expired the plaintiff may bring his action for the mesne profits.

PLATT, J., delivered the opinion of the court. The plaintiff deduces a regular chain of title under the patent of *Kayaderosseras*, granted the 2d of *November*, 1708, to *John Tatham* and 12 others ; and the defendant also shows a regular deduction of title under the patent of *Queensbury*, granted the 20th of *May*, 1762, to *Jacob Haviland* and others. Each of the patents (by reason of an interference) covers the premises in question. On this general view, the plaintiff claiming under the *oldest* patent would, of course, be entitled to recover. But the defence is rested on two grounds ; 1st. That the conveyance from *George Clark* to *Dirck Lefferts* and *Peter Remsen*, dated the 14th of *March*, 1768, under which the plaintiff derives title, was void, as it regards the premises in question, by reason of an *adverse possession.*

2d. That the plaintiff's claim is barred by the statute of limitations.

In support of these objections, the defendant proved, that, on the 9th of *November*, 1762, a deed of partition was executed by the patentees of *Queensborough*, whereby lot No. 102., of that patent, (including the premises in question,) was released to *Jacob Haviland.*

The defendant further proved, that, in 1765, or 1766, *Jacob Haviland* put a tenant (*Asaph Putnam*) on that lot, containing 250 acres ; that *Putnam* continued on the lot, for 10 or 12 years, occupying and improving it as tenant under *Jacob Haviland;* and that the farm has ever since (with the exception of a few years during the war) been successively occupied by *Abraham Wing,* one *Martin, John Eddy,* and the defendant, under the title of *Jacob Haviland;* that there was a log house and barn built by *Asaph Putnam,* and 40 or 50 acres of the lot were cleared and reduced to cultivation before the revolutionary war.

On the part of the plaintiff, it is contended, that his title is protected from the operation of the statute of limitations, by the judgment in ejectment against *John Eddy.* It appears that, in 1788, or 1789, an ejectment suit was commenced in this court for *Dirck Lefferts,* as lessor of the plaintiff, upon a demise of 14 years, from the 10th of *January,* 1788, against *John Eddy,* then in possession of the premises ; that, in *April* term, 1790, a rule for judgment by default, against the casual ejector, was entered ; and that, on the 27th of *May,* 1811, a judgment roll was entered up and signed in that suit, being nine years after the demise in the declaration had expired. The plaintiff must fail on both points.

The possession of *Asaph Putnam,* on the 14th of *March,* 1768, (the date of the conveyance to *Lefferts* and *Remsen,*) was of the whole lot No. 102., in the allotment of *Queensbury* patent, containing 250 acres, as tenant under *Jacob Haviland,* one of the patentees of *Queensbury.* He occupied, *exclusively,* under that title. No question had then arisen as to the interference of the patent lines of *Kayaderosseras* and *Queensbury ;* and I think it would be absurd, as well as unjust, to consider *Putnam,* in 1768, as a tenant in common with *George Clark.* There existed between them no privity of contract or estate, and they claimed under separate and independent titles. I, therefore, consider it immaterial, whether *George Clark* attempted to convey the *whole title* in severalty, or only an *undivided share ;* because no act which he could do towards *Lefferts* and *Remsen,* could change the character of *Putnam's* possession. If that possession were *adverse* against the *whole title* of *Kayaderosseras,* it must be equally so against an undivided share of that title. I am, also, clearly of opinion, that the proceedings and judgment in the ejectment suit against *John Eddy* afford no support to the plaintiff's title.

The action of ejectment is only a *possessory remedy* in favour of a person having a right of entry ; it does not establish and conclude the question of title, as in real actions.

It is true, the lessor in ejectment may enter after judgment, without a writ of possession ; and the judgment is evidence of his right of entry, as between the parties and privies, so as to protect him against an action of trespass, *so long as the effect of the judgment continues.* But here the lessor of the plaintiff has waived his right of entry under the judgment against *Eddy,* and

has slept until the term of the demise has expired ; and, I think, he now stands in the same relation to the defendant as if he had never attempted a legal remedy by the former suit.

In the case of *Aslin* v. *Parkin*, (2 *Burr.* 667, &c.,) Lord *Mansfield* says, " a judgment in ejectment, like all others, only concludes the parties as to the subject-matter of it ; and, there-fore, beyond the time laid in the demise, it proves nothing at all."

A party having title may enter, *peaceably*, without the aid of the law ; that is, without judgment or suit ; and having so en-tered without force, his possession enures according to his title. The remedy, by ejectment, is intended merely to enable a party having title to enter, *by force*, under a writ of possession, which he could not lawfully do without such writ. In this case, there has been no *actual entry* with, or without, writ of possession. The lessor of the plaintiff might have availed himself of the arm of the law to put him in possession ; but he neglected to do so, until the authority for that purpose expired ; and he is now in the same predicament as if that authority had never existed.

I have no doubt, that the possession of the defendant, and those under whom he claims, has been *adverse* ever since its commencement. On every ground, therefore, the defendant is entitled to judgment.