# THE PEOPLE OF THE STATE OF NEW YORK ex rel. DANIEL C. SCUDDER v. ALLEN COOPER.

*Judgment in an action of ejectment — sheriff entitled to take peaceable possession as agent of the plaintiff — Stay of proceedings — what not a violation of — Costs in proceedings to punish for contempt.*

At 9 A. M., on the 18th day of May, 1874, one Fountain entered a judgment in his favor, in an action of ejectment brought by him against one Scudder to recover the possession of a house and lot in Elmira.    A writ of possession was issued thereon to the sheriff, requiring him to deliver possession, "without delay," in pursuance of which he, accompanied by one Arnot, the assignee of Fountain's right, went to the house, told Scudder that he wanted immediate

possession, refused his request for a delay, took the keys of the front and back doors and put them in his pocket, and proceeded, with his assistant, to remove Scudder's property from the house.

At 1 P. M., of the same day, he was served with an order staying all proceedings upon the judgment and the writ, pending the decision of a motion for a new trial. After he had read the order he stopped the further removal of the goods, told a person in the house that she had better go out, as he was going to lock up the house, and having locked the doors went away, leaving a deputy in possession.

Upon an appeal from an order adjudging the sheriff guilty of a contempt in violating the stay of proceedings, and imposing a fine upon him therefor ; *held*, that Arnot, as the assignee of Fountain, was, by virtue of the judgment, entitled to take possession of the premises if he could do so peaceably.

That the sheriff could take possession as his agent, and, having done so, rightfully commenced to remove the defendant's goods.

That when served with the order staying all further proceedings Arnot was already, by virtue of what had been done, in possession of the premises ; that the sheriff was not required to turn out Arnot and reinstate Scudder in possession, and that his failure so to do did not render him guilty of a contempt.

In proceedings to punish for a contempt where the party acted in good faith, and in accordance with what he belived to be his duty, only motion fees and disbursements can be taxed as costs.

APPEAL from an order adjudging the defendant guilty of a contempt.

At 9 A. M., on the 18th day of May, 1874, one Jabez H. Fountain entered a judgment in the office of the clerk of the county of Chemung, in an action wherein he was plaintiff, and the relator, Daniel C. Scudder, was defendant, the judgment being for the recovery of certain real estate situate in the city of Elmira, in the said county of Chemung, and of which the relator was in the possession, the judgment being entered upon the verdict of a jury. On the same day a writ of possession was issued and delivered by the attorney for Fountain to the above-named Allen Cooper, as sheriff of said county of Chemung. The sheriff immediately proceeded in its execution by removing the furniture from the house.

At about one o'clock in the afternoon of that day, the sheriff was served with an *ex parte* order granted by Justice BALCOM, staying all proceedings upon the judgment and execution, to enable defendant to make a motion for a new trial.

On the 22d day of May, 1874, a further order was granted requiring the sheriff to show cause before a Circuit Court and Special Term, then in session at Elmira, on the twenty-fifth day

488 THE PEOPLE ex rel. SCUDDER v. COOPER.

THIRD DEPARTMENT, APRIL TERM, 1880.

of May then inst., why the sheriff should not be punished for alleged misconduct in disobeying the aforesaid order staying proceedings.

On the 18th day of June, 1874, at Binghamton, the judge rendered his decision granting the defendant's motion for a new trial, upon condition that defendant pay all costs and damages recovered by the judgment by the first of July following. If not paid then, motion denied. And in the same decision he adjudged the sheriff to be guilty of a contempt, and sent the case to a referee to take proof and report to the court as to the damages Scudder sustained by reason of the disobedience by the sheriff of the order staying proceedings, and whether the sheriff should be punished for willful misconduct.

The matter was heard before the referee, and on the 5th day of August, 1876, he made his report; and on the 24th day of April, 1877, an order was made overruling the sheriff's exceptions to the referee's report, and adjudging that he was guilty of the misconduct charged against him, and that such misconduct was willful and deliberate.

It allowed Scudder $72.53 actual damages, $196.40 costs of the order to show cause, imposed a fine of $250, and an imprisonment of six months if the fine was not paid. The items comprising the $196.40 costs included proceedings before, and after trial, a trial fee, and a fee for the argument of exceptions to the referee's report.

*J. A. Reynolds* and *J. McGuire*, for the appellant.

*R. King*, for the respondent.

LEARNED, P. J. :

This court decided in November, 1879 (19 Hun, 165), in the case of *Powers* v. *Athens*, that on such a proceeding as this the only costs taxable were motion fees and disbursements. Under that decision the items of proceedings before trial, proceedings after trial, and trial, could not be allowed.

On the 18th day of May, 1874, at 10 A. M., a writ of possession was issued to the sheriff on a judgment in ejectment, in which

Fountain was plaintiff and Scudder defendant. The writ required the sheriff to deliver possession " without delay." That was the proper form provided by statute and established by practice. (2 R. S. [m. p.], 308, § 34, 2 Burr. Pr., 326, 3 id., 588.) The sheriff at once proceeded to execute the writ, going to the house with Arnot, the assignee of the plaintiff's rights. At about 1 P. M. the sheriff was served with an order staying proceedings. On the twenty-second of May he was served with an order to show cause why he should not be punished for contempt for disobeying that order. Hence it appears that the matter in dispute relates to the conduct of the sheriff after he was served with the stay, May eighteenth, 1 P. M., and before he was served with the order to show cause, May twenty-second.

Much of the evidence taken before the referee has nothing to do with the question. It relates to an alleged oppressive execution of the writ, before the service of the stay, and to conduct of the sheriff after he was adjudged to be in contempt, June eighteenth. It is of no consequence on the present matter in what manner, before the service of the stay, the sheriff had executed the writ. The question here is whether he had disobeyed the stay after it was served and before the order to show cause was served on him.

Judge BALCOM decided, June eighteenth, that the sheriff had disobeyed the order, and he referred it to a referee to inquire what damages Scudder had sustained, and whether the sheriff's disobedience was willful. These were the only matters sent to the referee.

The testimony of Scudder, who, of course, is the most favorable witness against the sheriff, is that the sheriff had commenced taking out the goods ; that thereupon he went to his counsel and procured from Judge BALCOM the stay ; that he served it on the sheriff; that the sheriff was reading it and the papers on which it was granted for perhaps five minutes ; that Mr. Arnot, the party in interest, said that was the justice's signature, and they must stop. Scudder says that while they were examining the papers, the men were carrying out furniture. The house was at that time unlocked and the doors open.

Mrs. Barnett, his daughter, says that, after the papers were

490     THE PEOPLE ex rel. SCUDDER v. COOPER.

THIRD DEPARTMENT, APRIL TERM, 1880.

served, the sheriff came in and asked her and Mrs. Spaulding (a visitor), if they would go out, as he wanted to lock the doors. She asked if she could stay. He said she would better go, as he wanted to lock the door. She went out and he locked the door.

The sheriff states that he went to the house in the morning, and Scudder told him he would not give it up ; that he told Scudder his orders were to take possession and remove his goods ; that he took the front door key when he went there, and, with his assistant, commenced removing the goods through the front door, the side door and the back door ; that when the order was served on him he stopped at once, removed no more goods, locked the doors and left his deputy in possession, and sent up a man in the morning who remained in possession.

Mr. Arnot states that the sheriff took the keys of the front and back doors and put them in his pocket when he went there in the morning ; that the removal of goods was stopped when the order was served, and that the house was locked up.

The sheriff testifies, and there is no contradiction, that he supposed it was his duty to lock up the house, after the order was served ; that he had the keys, and thought it necessary to protect the property, and that he had no intention of disobeying the order.

The final order, made subsequent to the order of Judge BALCOM, finds the sheriff guilty of disobedience by allowing goods to be removed, by refusing Scudder permission to put his goods back, by inducing the inmates to leave the house, and by locking it up and keeping possession.

The evidence shows that after the sheriff had read and understood the papers he did not permit any furniture to be removed. He had a right to a reasonable time to read and understand the order, and, when he learned what it was, he obeyed it, as to the removing of furniture. Whether, before that time, he had removed the furniture carefully or carelessly has nothing to do with this matter.

By virtue of the judgment, without any writ, the plaintiff, or Arnot as assignee, was entitled to take possession of the premises, if he could do so peaceably. The judgment protected him from an action of trespass for entering and taking possession. (*Jackson*

v. *Haviland*, 13 Johns., 234; 2 Burr. Pr., 326; *Witbeck* v. *Van Rensselaer*, 64 N. Y., 27.) What he could do himself he could authorize the sheriff, as his agent, to do. Possession may be taken even after the return day of the writ, as was held in the case last cited. In that case also the court say, that while it is the duty of the sheriff to remove the personal property on the premises, yet the omission to do this does not vitiate the execution of the writ, if possession of the land is delivered.

The relator cites *Kingsdale* v. *Mann* (1 Salk., 321), *S. C.* (6 Mod., 27), as authority that the writ of possession will not be regarded as fully executed until the sheriff and his officers are gone and the plaintiff left in full possession. The case does not decide this. It has been thus cited in the text-books, through the error of taking the marginal notes, as a correct statement of the decision. Possession had been delivered at 9 A. M., and at 6 P. M. the plaintiff was forcibly put out of possession. The only question is whether the court should grant an attachment in aid of the old writ, or should grant a new writ.

In *Dawley* v. *Brown* (43 How., 22), the sheriff had delivered possession after a judgment in ejectment on the seventh of April. The judgment was set aside on the eighth. The Special Term on the fifteenth ordered the plaintiff to desist from interfering with the possession, and afterwards punished him for disobedience. The General Term reversed the order, and held that the order of the fifteenth was utterly void.

Now, in the present case it is not disputed that Arnot went with the sheriff and told him that he wanted immediate possession. The sheriff, on behalf of Arnot, took the keys of the front and back door and put them in his pocket, and, as Arnot says, took possession. Scudder's request for delay was refused; and he made no resistance to their entry. They entered claiming title. They were not trespassers, because the judgment had established Arnot's rights. And they took possession both by actual entry and by taking the keys. That there still remained property of Mrs. Barnett on the premises did not prevent their acts from being an actual and valid taking of possession. (*Witbeck* v. *Van Rensselaer* [*ut supra*].)

It was proper thereupon that the sheriff should proceed to

remove the property on the premises belonging to the occupants, as he did. But when he was stopped in doing this by the stay, he was not authorized to turn out Arnot and replace Scudder. All that he could be required to do was to stop removing the goods. The keys were in his possession, as Arnot's agent; and he had no right to give them up to Scudder. It was because Arnot had taken possession of the premises that the sheriff proceeded to remove the goods of other persons therefrom, and Arnot remained in possession, notwithstanding the stay.

The sheriff acted rightfully in locking up the house. It would have been imprudent to leave it open. He informed Mrs. Barnett that he was about to lock up; and she would best go. It does not appear that she had any rights in the house except that she boarded with Scudder.

The sheriff further testifies, without contradiction, that in locking up the house and in all that he did he thought he was doing his duty. If he were even mistaken in this respect, it seems to be strange to hold him guilty of a willful contempt.

The order should be reversed, with ten dollars costs and printing disbursements.

Present — LEARNED, P. J., BOARDMAN and BOCKES, JJ.

Order reversed, with ten dollars costs and printing disbursements, and motion to punish sheriff denied with ten dollars costs, and motion to dismiss appeal denied, without costs.