Theobald, &c. *vs* Hare.

ERROR TO THE FRANKLIN CIRCUIT.

*Bills of Exchange.   Instructions.   New trial.*

CHIEF JUSTICE MARSHALL delivered the opinion of the Court.    *December* 13.

THIS was an action by petition and summons, (under ⟶ Case stated. our statute,) upon a bill of exchange for $2,500, drawn by Theobald and endorsed in blank by Fenwick, address- ed to T. J. Read, Son & Co., of New Orleans, and reg- ularly protested as a bill held by Hare, for non-ac- ceptance and non-payment, of which due notice was given to the drawer and endorser.   Upon these facts, and the endorsement of Fenwick having been filled up in favor of Hare, the plaintiff's right of recovery is un- questionable, unless repelled by other circumstances.

The defence attempted to be made, as embodied in ⟶ The defence re- lied upon. the second plea of the defendants was, that the bill had been drawn and endorsed for the sole accommodation of T. J. Read & Son, to whom it was delivered, to be by them accepted, and they agreed to protect the bill, and pay it at maturity ; but that holding the bill for the purpose aforesaid, they refused to accept it, and caused it (just before its maturity,) to be protested for non-ac- ceptance, and at maturity, to be protested for non-pay- ment, when it had not been put into circulation by them, and that after it became due, and was protested for non-payment, it was transferred to the plaintiff by handing it to an attorney to bring suit on in plaintiff's name, and to be credited to T. J. Read & Son, only in the event of its being collected, &c., and the plaintiff advised by letter that this could be done.   The defend- ants also pleaded *nil debit*.   The bill was dated the 29th of May, 1844, payable eight months after date, which expired January 29th, 1845, and the bill matured, (three days of grace being allowed,) on the 1st of February, 1845.   It was protested for non-acceptance on the 31st of January, and for non-payment on the 1st of February.

THEOBALD, &c.
*vs*
HARE.

The substance of the evidence and finding of the jury, &c.

The evidence authorized the jury to find that Fenwick endorsed the bill as the friend of Theobald, and for him, and that it was not drawn without consideration, and solely for the accommodation of Read & Son, but that Theobald was largely indebted to them, and signed the bill and had it endorsed as presented to him by T. J. Read, and delivered it to him for the use of T. J. Read & Son, or otherwise at their discretion; that T. J. Read & Son were under no obligation to accept or pay the bill, except as implied from its form, unless Theobald should furnish them with the means of payment; that having retained the bill in their possession, and being in circumstances of embarrassment, and largely indebted to the plaintiff, residing in Virginia, they wrote to him on the 30th of December, 1844, that they would place a draft for $2,500, due 1st of February, in the hands of a lawyer, to be collected on his account, and as is to be inferred, in his name; that they did before the maturity of this bill, put it in the hands of Newcomb & Brother, of Louisville, who had been the correspondens of plaintiff, for his benefit; that Newcomb & Brother sent it to New Orleans, where it was presented for acceptance and payment as a bill held by Hare, and protested as above stated; and that after it was returned to Newcomb & Brothers, at Louisville, they placed it in the hands of T. J. Read, residing there, and having the house of T. J. Read & Son there, and that on the 12th of February, 1845, he placed it in the hands of an attorney for collection as a bill held by Hare, to whom he transmitted the attorney's receipt by letter of the 7th of March following; that T. J. Read & Son credited Theobald by the amount of the bill when they passed it to Hare, and that a credit was entered in their favor on the books of Hare, dated 12th of February, 1845.

Upon these facts, a verdict for the plaintiff, without instructions from the Court, could not have been assailed as being contrary either to the law or the evidence. T. J. Read, although one of the drawees of the bill, had by the conditions of the delivery to him, a right to use it for the benefit of T. J. Read & Son, and such use operating as a credit to Theobald, enured also to his benefit.

As between Theobald and the drawees, neither the non-acceptance of the bill, nor the putting it into circulation without acceptance, can be regarded as fraudulent or as injurious to Theobald, unless it should be understood that Theobald was to have a remedy upon the bill against the drawees if they should not pay. But if the bill was delivered to the drawees to enable them to raise money, or to obtain a credit for the payment of Theobald's debt, or to be entered to the credit of Theobald in his account with T. J. Read & Son, if they should use it, and not for the mere purpose of being accepted for the benefit of Theobald or of Fenwick as the holder, nor for the purpose of giving recourse against the drawees, in case Theobald or the first endorser, his friend, should be compelled to pay it, there is no ground of complaint against Read. In this view of the case, which is clearly authorized by the evidence, the implied promise of the drawees to accept the bill, or their acceptance if made, should be regarded not as an engagement for the benefit or indemnity of Theobald or his endorser, but as a means of giving credit to the bill, and of enabling the drawees to use it for the purpose for which it was intended. If they had accepted the bill, and had paid it after having put it into circulation, and given credit to Theobald for the amount, this payment would in effect have annulled the credit, and they would have been entitled to demand from him their original debt. But the payment of the bill by Theobald would only have fixed his right to the credit given to him on account of the bill, and he would have been entitled to recover from them only to the extent that the credit given to him, or his payment on the bill exceeded his indebtedness to them, or to the extent of the balance in his favor on the whole account. Fenwick, as the accommodation endorser of Theobald, must be presumed to have become a party to the bill on the credit of Theobald, and appears to have had no connection with or claim upon the drawees. By endorsing the bill in blank and delivering it to Theobald, he in effect submitted himself as endorser, to such arrangement as Theobald

might make. And he occupies no better ground in reference to them, than Theobald himself does.

Whether under the circumstances, Read & Son could have put the bill into circulation after its maturity, with the effect of enabling the holder to coerce payment from the drawer and endorser, we need not enquire. The Court, on motion of the defendant, instructed the jury that if they believed from the evidence, that the title to the bill did not pass to the plaintiff before its maturity, he could not recover, but added that "if they believed that the bill was delivered by T. J. Read & Son to Newcomb & Brothers of Louisville, for the plaintiff, who received it for plaintiff, and that the plaintiff never renounced the benefit of said delivery, the title to the bill passed to the plaintiff." These were the only instructions given to the jury. The defendants excepted to the qualification or addition made to the instruction as asked for by them. But as the passing of the title to the bill referred to the jury by the instruction as asked involved a question of law, there was no impropriety in the Court's telling them with reference to the facts of the case, what would pass the title. And as the evidence authorized the finding of the facts referred to, the only question on the qualification is, whether upon those facts the law determines that the title passed.

*It is proper for the Court to modify or add to instructions asked by a party, to meet the Court's opinion of the law of the case.*

Upon this question we think there can be no doubt. It is true the delivery of the bill to Newcomb & Brothers was made probably without the knowledge of Hare at the time, and without any express authority from him to them to receive the bill for him, and without any express assent by him to the transfer of the bill to him. But being an act obviously beneficial to him, apparently necessary for his security, and in no way detrimental, his assent is presumed until the contrary appears. Besides, he was informed in general terms, by the letter of the 30th of December, of the nature of the intended security, and he not only did not dissent, but some short time afterwards entered a credit in favor of Read & Son for the bill, and thus ratified the transfer to him. Nor is it, in our opinion, material that he was not apprised of the precise time or manner of the transfer.

*The delivery of a bill of exchange to the friend of a party for his use and benefit, is presumed to pass the right, unless the party disapprove—and if ratified, the ratification relates back to the time of delivery.*

The delivery to Newcomb & Brothers was itself an effectual transfer, which authorized them to fill the endorsement to themselves for Hare, subject to his rejection. And as he in fact accepted instead of rejecting the transfer, it would have been in that form, and was in the form in which it was transacted, valid from the beginning. This conclusion is in analogy with the principle often recognized in the case of the delivery of deeds and mortgages for the benefit of absent grantees or *cestuis que trust.* It is not deemed necessary that the person to whom the actual delivery is made, should be the authorized agent for the party to be benefitted, nor that there should have been a previous express assent to the transaction by that party.

It being clear then, and undisputed, that so far as the drawer and endorser were concerned, Read & Son were authorized to pass the bill for their own benefit and for the purpose of obtaining money or credit in their business, we are of opinion that the delivery to Newcomb & Brothers for Hare, to whom they were indebted, and as a means of paying their debt, was an authorized use of the bill, and that not being rejected but in fact approved by Hare, the bill was in fact, put into circulation by that delivery, and the title passed as fully as in other cases of delivery with a blank endorsement, and Hare holds the bill as delivered to him before its maturity, which is the essential point of the instruction. As the jury were not instructed to find for the plaintiff if they believed the facts mentioned in the additional instruction by the Court, but were only told that upon those facts the title passed, &c., the instruction is not liable to the objection made, that it withdraws from the jury other facts essential to authorize a recovery. And as no erroneous instruction was given to the prejudice of the defendant, and as the evidence authorized the jury to find that the bill was passed in good faith, before its maturity, for a purpose consistent with its original design, and that the proper steps were taken to hold the drawer and endorser responsible, we need only say in further support of the judgment and of the refusal of the Court to grant a new trial, that the affidavit of Fenwick alledg-

T. being indebted to R. drew a bill upon R. which was endorsed by F. and placed in the hands of R. to raise funds. R. after the day of payment and protest, endorsed it to H. who sued the drawer and endorser— Held that they were liable to the endorsee.

An affidavit for a new trial should alledge that the witness, by previous statements deceived the party as to what he would swear, and that the party could prove the facts to be different by other evidence.

ing surprise at the statements of T. J. Read, introduced as a witness for the defence, does not disclose sufficient ground for setting aside the verdict. It is not even alledged that the witness had, by any previous statement, deceived either Fenwick or Theobald, nor that they can prove by any other witness, the facts which they desired to prove by him, nor that they can disprove the facts stated by him on the trial. He was, moreover, not a necessary witness, and having used him as a witness without ascertaining what he would prove, they must abide the consequences.

Wherefore, the judgment is affirmed.

*Craddock* for plaintiffs; *Cates & Lindsey* for defendant.