### William J. Mettler

*v.*

### Jonathan T. Miller.

*Filed at Ottawa October 31, 1889.*

1. ESTATE BY THE CURTESY—*when it will attach—widow in possession and dower not assigned.* In 1846 the owner of land died intestate, leaving a widow, and a daughter as his sole heir. In 1851 the daughter married, and there was issue born of the marriage, but the widow's dower was never assigned : *Held,* that the husband of the heir took an estate by the curtesy initiate upon the birth of issue, notwithstanding the widow's right of quarantine, as the possession of the widow, under the statutory right to retain the possession of the dwelling house and plantation thereto belonging until her dower should be assigned, was not adverse to the title of the heir by descent.

2. SAME—*seizin in fact—whether essential.* A seizin in fact, as distinguished from a seizin in law, prior to the time the estate by the curtesy was abolished by statute, was not necessary in order to vest an estate by the curtesy. In this State actual possession is not essential to the passing of title to real estate by conveyance, will or the Statute of Descents.

3. SAME—*purchaser from tenant by the curtesy—what rights accrue to him.* If a sale is made by a husband, of land in which he has an estate by the curtesy, of which he has never been in the actual possession, but his immediate or remote grantee takes possession under the purchase, such act will perfect the husband's title as tenant by the curtesy, and the vendee will have the right to the land during the lifetime of the husband.

4. SAME—*elements and character of estate initiate.* The interest of the husband as tenant by the curtesy initiate, prior to the abolition of the estate of curtesy, was a legal estate, which was assignable. It was a freehold during the life of himself and wife, with a freehold in remainder to himself for life, and a remainder to the wife and her heirs in fee.

5. WIDOW'S QUARANTINE—*abandonment.* If a deed be made by a widow, of lands of her husband, whether it operates to convey to the grantee her dower and quarantine rights or not, the surrender of the possession thereunder will be effective as an abandonment of such quarantine rights.

6. DEED OF MARRIED WOMAN—*acknowledgment—how far essential—and its requisites.* Under the law of this State as it existed in 1853, the acknowledgment of a deed by a married woman, was an essential part

of the execution of the deed; and where the certificate of the acknowledgment thereof failed to show that she was examined separate and apart from her husband, and that the contents of the deed were made known and explained to her, the deed, as to her and her heirs, will be held inoperative and void.

7. EVIDENCE—*as showing under what title a party claims.* Where a defendant in ejectment is in possession of premises, and a source of title is traced to him, it is *prima facie* evidence that he is in under that title, and it devolves on him to show the contrary.

8. LIMITATIONS—*adverse possession.* The possession of land by a tenant for life can not be adverse to the remainder-man or reversioner; and if the life tenant conveys to a third person, by words purporting to pass the absolute property, the possession of the purchaser can not be, during the continuance of the life estate, adverse to the remainder-man or reversioner, so as to set the Statute of Limitations running against the latter.

9. The possession of a tenant for life, or that of his vendee, during the continuance of the life estate, is, in contemplation of law, the possession of the remainder-man or the reversioner; and until such life estate terminates, the remainder-man or reversioner has no right of action, and the Statute of Limitations will not begin to run against a party before his right of action accrues. Until then no *laches* is imputable to the party holding title.

APPEAL from the Circuit Court of Ogle county; the Hon. WILLIAM BROWN, Judge, presiding.

Messrs. O'BRIEN & O'BRIEN, for the appellant:

The deed of Isaac Ross and his wife was inoperative as to the estate of the wife, as the certificate of acknowledgment failed to show that she was examined separate and apart from her husband, and that the contents of the deed were made known and explained to her. The acknowledgment was an essential part of the execution of the deed. *Mason* v. *Brock,* 12 Ill. 273; *Garrett* v. *Moss,* 22 id. 364; *Tourville* v. *Pierson,* 39 id. 454; *Lindley* v. *Smith,* 58 id. 250; 46 id. 523; *Kerr* v. *Russell,* 69 id. 666; *Lyon* v. *Kain,* 36 id. 370.

When a source of title is traced to the defendant, the presumption of law is that he is in under that title, until he shows

the contrary. *Snapp* v. *Peirce*, 24 Ill. 157 ; *Holbrook* v. *Brenner*, 31 id. 511 ; *Transportation Co.* v. *Gill*, 111 id. 555.

In order to avail himself of the benefits of sections 6 and 7 of the Limitation act of 1839, appellee must show his possession or color of title to have been adverse. *Woolley* v. *Magie*, 26 Ill. 526 ; *McClellan* v. *Kellogg*, 17 id. 504 ; *Busch* v. *Huston*, 75 id. 347 ; *McNamara* v. *Seaton*, 82 id. 501 ; *Boden* v. *Sherman*, 101 id. 486 ; *Ferbrache* v. *Ferbrache*, 110 id. 218 ; *Whiting* v. *Nicholl*, 46 id. 241 ; *Dolton* v. *Erb*, 53 id. 289 ; *Kirk* v. *Smith*, 9 Wheat. 241 ; *Dewey* v. *McLain*, 7 Kan. 130 ; *Miller* v. *Shackleford*, 3 Dana, 295 ; *Woods* v. *Smith*, 1 Head, 279 ; *Gill* v. *Fauntleroy's Heirs*, 8 B. Mon. 177 ; *Merriman's Heirs* v. *Coldwell's Heirs*, id. 33 ; *Van Arsdale* v. *Fauntleroy's Heirs*, 7 id. 401 ; *Cullen* v. *Metzer*, 59 Pa. St. 359 ; *Mellus* v. *Snowman*, 21 Me. 201 ; *McCorry* v. *King's Heirs*, 3 Humph. 267 ; *Gidding* v. *Smith*, 15 Vt. 344 ; *Kallenback* v. *Cracraft*, 36 Ohio St. 584 ; *Balling* v. *Teal*, 76 Va. 487 ; *Harleman* v. *Hazelett*, 55 Iowa, 256 ; *Safford* v. *Stubbs*, 117 Ill. 389 ; *Railroad Co.* v. *Reich*, 101 id. 175 ; *Irving* v. *Brownell*, 11 id. 412 ; *Wright* v. *Keithler*, 7 Iowa, 94 ; Angell on Limitations, 473, 478.

The possession must not only be adverse, but inconsistent with the title of the other party. *Cook* v. *Norton*, 48 Ill. 20 ; *Davis* v. *Easley*, 13 id. 198 ; *Dolton* v. *Erb*, 53 id. 289.

Neither appellee's possession nor his color of title was adverse to Maria Ross during her life, nor to her heirs and their grantees after her death, until the death of Isaac Ross, in 1885. *Miller* v. *Shackleford*, 3 Dana, 295 ; *Salmon* v. *Davis*, 29 Mo. 181 ; *Woods* v. *Smith*, 1 Head, 279 ; *Dewey* v. *McLain*, 7 Kan. 130 ; *Kirk* v. *Smith*, 9 Wheat. 241 ; *Gill* v. *Fauntleroy's Heirs*, 8 B. Mon. 177 ; *Constantine* v. *Van Winkle*, 6 Hill, 193 ; *Day* v. *Cochran*, 24 Miss. 272 ; *Merriman's Heirs* v. *Coldwell's Heirs*, 8 B. Mon. 33 ; *Van Arsdale* v. *Fauntleroy's Heirs*, 7 id. 701 ; *Cullen* v. *Metzer*, 59 Pa. St. 359 ; *McCorry* v. *King's Heirs*, 3 Humph. 267 ; *Guion* v. *Anderson*, 8 id. 307 ; *Dyer* v. *Brannock*,

66 Mo. 392; *Kallenback* v. *Cracraft*, 36 Ohio St. 584; *Bolling* v. *Teal*, 76 Va. 487; Wood on Limitations, 524-529.

Seizin in fact or in deed, as contradistinguished from seizin in law, on the part of Isaac or Maria Ross, was not necessary in order that Isaac Ross should have an estate by the curtesy. *Willis* v. *Watson*, 4 Scam. 64; *Peters* v. *Spillman*, 18 Ill. 374; *Vinson* v. *Vinson*, 4 Bradw. 138; *Newkirk* v. *Cone*, 18 Ill. 452; *Shackelton* v. *Sebree*, 86 id. 620; *Harvey* v. *Wickam*, 23 Mo. 113; *Reaume* v. *Chambers*, 22 id. 36; *Stephens* v. *Hume*, 25 id. 349; *Redus* v. *Hayden*, 43 Miss. 614; *Day* v. *Cochrane*, 24 id. 272; *Wass* v. *Buckman*, 38 Me. 360; *Chew* v. *Commissioners*, 5 Rawle, 160; *Stoolfoos* v. *Jenkins*, 8 S. & R. 175; *Buchanan* v. *Duncan*, 40 Pa. St. 88; *Bush* v. *Bradley*, 4 Day, 298; *Klein* v. *Bebee*, 6 Conn. 494; *Borland* v. *Marshall*, 2 Ohio St. 308; *Lessee of Mitchell* v. *Ryan*, 3 id. 377; *Lessee of Merritt* v. *Horne*, 5 id. 307; *Jackson* v. *Johnson*, 5 Cow. 97; *Guion* v. *Burton*, 1 Meigs, 571; *Guion* v. *Anderson*, 8 Humph. 323; *In the matter of Cregier*, 1 Barb. Ch. 598; *Safford* v. *Safford*, 7 Paige, 251; *Malone* v. *McLaurin*, 40 Miss. 163; *Ferguson* v. *Tweedey*, 43 N. Y. 543; *Sterling* v. *Penlinton*, 2 Eq. Cas. Abr. 730; *Adair* v. *Lott*, 3 Hill, 182; *Green* v. *Leiter*, 8 Cranch, 249; *Clay* v. *White*, 1 Munf. 162; 1 Washburn on Real Prop. 173, 136, 174; Mass. Gen. Stat. chap. 134, sec. 3; 4 Kent's Com. 30; 1 id. 35; Cruise's Digest, 112, 524.

The quarantine right in the widow, Charlotte A. Powell, did not prevent the vesting in Issac Ross of an estate by the curtesy. *Doane* v. *Walker*, 101 Ill. 641; *Cool* v. *Jackman*, 13 Bradw. 563; *Reynolds* v. *McCurry*, 100 Ill. 360; *Holman* v. *Gill*, 107 id. 473; *Musham* v. *Musham*, 87 id. 83; *Ferbrache* v. *Ferbrache*, 110 id. 218; *Stephens* v. *Hume*, 25 Mo. 349; 4 Kent's Com. 28.

The Limitation law of 1839 does not begin to run against a remainder-man until a right of action accrues, and that does not accrue till the termination of the life estate. *Harleman* v. *Hazelett*, 55 Iowa, 256; *Steel* v. *Gellalty*, 41 Ill. 39; *Higgins*

v. *Crosby,* 40 id. 260; *Dugan* v. *Follett,* 100 id. 581; *Jacobs* v. *Rice,* 33 id. 370; *Heath* v. *White,* 5 Conn. 236; *Jackson* v. *Schoonmaker,* 4 Johns. 390; *Valle* v. *Obenhause,* 62 Mo. 82; *Jackson* v. *Sellick,* 8 Johns. 262; *Moore* v. *Jackson,* 4 Wend. 58; *Bruce* v. *Wood,* 1 Metc. 542; Angell on Limitations, sec. 371, *et seq.*

The same is true as to a bill to remove a cloud from a title. *Lang* v. *Hitchcock,* 99 Ill. 550; *Dyer* v. *Brannock,* 66 Mo. 422.

Mr. M. D. HATHAWAY, and Mr. WILLIAM LATHROP, for the appellee:

The passage of the Married Woman's act of 1861 relieved Maria Ross, as wife of Isaac Ross, of her disability to sue. *Castner* v. *Walrod,* 83 Ill. 171; *Enos* v. *Buckley,* 94 id. 458; *Geisen* v. *Heiderich,* 104 id. 537; *Kibbe* v. *Ditto,* 93 U. S. 674.

Good faith in taking the deeds will be presumed. *Davis* v. *Hall,* 92 Ill. 85; *McCagg* v. *Heacock,* 34 id. 479.

When Parker entered into the possession of the lots, Maria Ross was under no disabilities whatever. *Hayward* v. *Gunn,* 82 Ill. 385; *Castner* v. *Walrod,* 83 id. 171; *Enos* v. *Buckley,* 94 id. 458; *Safford* v. *Stubbs,* 117 id. 389.

Statutes of limitations run against every person not expressly excepted from their operation, and when they have once commenced to run, no intervening disability will arrest their operation. *Keil* v. *Healey,* 84 Ill. 104; *Sacia* v. *De-Graff,* 1 Cow. 156; Angell on Limitations, secs. 194, 485.

The Limitation act of 1839 runs against those under disability, and only saves to them the right to commence their suit within the time expressed after their disability ceases to exist. *Hodgen* v. *Henrichsen,* 85 Ill. 259.

Appellant does not dispute that the deeds introduced by appellee show color of title. Every one of them is fully within the rule of color of title as declared by this court. *Fagan* v. *Rosier,* 68 Ill. 84; *Bride* v. *Watt,* 23 id. 507; *Safford* v. *Stubbs,* 117 id. 389; *Dean* v. *Long,* 122 id. 447.

Mr. JUSTICE BAKER delivered the opinion of the Court:

This is ejectment, brought on the 4th day of November, 1885, in the Ogle circuit court, against Jonathan T. Miller, appellee. In the suit, William J. Mettler, appellant, seeks to recover, in fee, an undivided one-fourth interest in lot 8, and in the north half of lot 7, both in block 6, in Palmer's addition to the town of Rochelle, formerly called Lane.

Appellant's title, as exhibited at the trial, is as follows: The premises in controversy are in the north-east quarter of the south-west quarter of section 24, town 40 north, range 1, east of the third principal meridian. Sheldon Bartholomew bought a squatter's claim of said forty-acre tract of land about 1840, and settled thereon, and subsequently a patent for the land was issued to him by the United States. He died in 1846, intestate, and left him surviving, his widow, Charlotte Bartholomew, and a daughter, Maria Bartholomew, his only heir-at-law. In 1847 the widow was married to one Powell, and lived with him as his wife until 1853, when he deserted her and went to California, and they were divorced in 1856. The daughter, Maria Bartholomew, intermarried with Isaac Ross in March, 1851. The farm of Sheldon Bartholomew included not only said quarter quarter-section, but other lands adjoining, and he occupied such farm before and at the time of his death. His widow continued to live there until Powell left, in 1853, but her dower was never assigned to her. The daughter, Maria, and Isaac Ross, her husband, built a house near the house that had been occupied by her father, and he worked and managed a portion of the Bartholomew land. Maria Ross died in March, 1871, and left her surviving, her husband, Isaac Ross, and as her heirs-at-law six children, Carrie Agnew, Jennie Bronson, Louisa Hutchinson, Sheldon B. Ross, Grace M. Horn and George Ross. The grandmother of these children, Charlotte Powell, died in June, 1872. On February 14, 1884, Sheldon B. Ross and wife conveyed to appellant and one Porter

E. Chamberlain, jointly, one-sixth of certain lands, which included the forty-acre tract of land above mentioned, and by deed dated March 6, 1883, Grace M. Horn and husband conveyed to appellant one-sixth of the same lands. Under and by virtue of these two latter conveyances appellant claims to be the owner in fee of an undivided one-fourth of said lot 8 and north half of lot 7.

The case relied upon by appellee is as follows: Gilbert Palmer and wife, by warranty deed dated November 27, 1855, conveyed to Thomas D. Robertson the premises in question and other lands; said Robertson and wife, by quitclaim deed dated January 21, 1864, conveyed said premises and other lands to John Van Nortwick; Van Nortwick and wife, by their conveyance dated July 25, 1866, deeded and warranted the premises in controversy to Joseph Parker; said Parker and wife, by warranty deed dated November 29, 1869, conveyed said premises to James F. Miller and Jonathan T. Miller, and said James F. Miller and wife, on July 29, 1872, quitclaimed their right and interest in the same to Jonathan T. Miller, the appellee. By stipulation, it is also a part of appellee's case that Thomas D. Robertson paid all taxes assessed upon the property in suit, from 1856 to 1863, both inclusive; that John Van Nortwick paid all taxes assessed thereon for 1865 and 1866; that Joseph Parker paid all taxes assessed against said premises for the years from 1866 to 1869, both inclusive; that James F. Miller and Jonathan T. Miller paid all taxes assessed against them from 1870 to 1872, both inclusive, and that Jonathan T. Miller paid all taxes assessed against them since the year 1872 and until the commencement of this suit; and also, that said Robertson, Van Nortwick, Parker, James F. Miller, and appellee, at and during the times they so paid taxes, respectively and successively claimed to be the owners in fee of said premises. It also appears the lots were, from 1856 to 1866, inclusive, vacant and unoccupied; that Parker entered into the actual possession of the premises early in

1867, fenced them, set out trees thereon, and cultivated the land as a garden until he sold to the Millers. The Millers took and retained actual possession under their deed from Parker, and built a house thereon, and after James F. quit-claimed to Jonathan T., the latter had actual possession until after suit brought, and lived there, and enlarged and built additions to the house.

The appellant also introduced in evidence, over the objections of appellee, five other conveyances and a plat, as follows: First, a certified copy from the records of a patent from the United States to Sheldon Bartholomew, dated March 1, 1848, for the north-east quarter of the south-east quarter of section 24, town 40 north, range 1 east; second, a deed from Isaac Ross, Maria Ross and Charlotte Powell, to Robert P. Lane, dated August 18, 1853, for all that part of said quarter quarter-section lying west of the Ottawa and Rockford road; third, the plat of Palmer's addition to the town of Lane; fourth, a deed from Robert P. Lane and wife to Gilbert D. Palmer, dated November 30, 1855, for block 6 and other property in said addition; fifth, a warranty deed dated November 12, 1855, from Gilbert D. Palmer to William L. Porter, for block 6 and other blocks in said addition; sixth, a warranty deed from William L. Porter to Gilbert D. Palmer for lots 7 and 8 and other lots in said block 6, in said addition. Said patent and said several conveyances were duly recorded in Ogle county prior to the delivery of the several deeds relied on by appellee.

In respect to the title of appellant and his right of recovery, and leaving out of consideration, for the present, the defenses of appellee based on sections 6 and 7 of the present Limitation law, commonly known as the act of 1839, we decide the following points:

*First*—Upon the death of Sheldon Bartholomew the title to the land here in question vested in his only child and heir, Maria, subject to the dower of the widow. The dower never having been assigned, the latter had her quarantine rights in

the premises, but upon the marriage of Maria to Isaac Ross, and the birth of a child, born alive, as the result of such marriage, this quarantine right did not prevent Isaac Ross from taking an estate by the curtesy initiate. The possession of the widow, under the statutory right to retain possession of the dwelling house and plantation thereto belonging until her dower was assigned, was not adverse to the title of the heir, upon whom the law cast the fee immediately upon the death of the ancestor, and did not affect the right to curtesy. *Musham* v. *Musham*, 87 Ill. 80; *Reynolds* v. *McCurry*, 100 id. 356; *Doane* v. *Walker*, 101 id. 628; *Holman* v. *Gill*, 107 id. 467; *Stephens* v. *Hume*, 25 Mo. 349.

*Second*—It is uncertain, from the testimony, whether Ross, the husband, had, during coverture, the actual possession, *pedis possessio*, of the particular part of the land which is here in controversy, either by working it with his own team and implements, and on his own account, or jointly with Powell, as. tenants in common. It does appear, however, that the remote grantees of Isaac Ross, under the deed of July 19, 1853, had actual possession, and such possession was virtually his possession. If an entry is made upon the land of the wife by the husband, or by another person under him and by his authority, the same effect is produced, and the right to hold as tenant by the curtesy is the same. If a sale is made by the husband, and his immediate or remote grantee takes possession under the purchase, it is done by authority of the husband, and it. perfects his title as tenant by the curtesy, and the vendee has. a right to the land during the lifetime of the husband. *Van-Arsdale* v. *Fauntleroy's Heirs*, 7 B. Mon. 401.

But we do not understand that by the law of this State a. seizin in fact, as distinguished from a seizin in law, was, prior to the time the estate of curtesy was abolished by statute, necessary in order to vest an estate by the curtesy. The rule ·that only seizin in fact during coverture would entitle the husband to curtesy, was never strictly adhered to, either in Eng-

land or in this country. In *Davis* v. *Mason,* 1 Pet. 503, and numerous other cases, it was held that the rigid rule of the common law, that required actual possession as a condition precedent to curtesy, did not apply to the wild, vacant or unoccupied lands of the wife, and from the testimony in this case it is evident the land here involved was either cultivated and occupied by Ross alone, or jointly with Powell, or else was at that time vacant and unoccupied. But be this as it may, the doctrine requiring such actual possession was based on the common law rule or maxim, *seisina facit stirpitem,* and that was completely abrogated long ago by our statute. By that which is now the first section of our Conveyance act, livery of seizin was abolished; by that which is now the first section of the Statute of Descents, the real estate of intestate proprietors descended as provided for in the statute, without regard to actual seizin; and by that which is now the first section of the Statute of Wills, power was given to persons of requisite age and capacity to devise all their estate, right, title and interest, in possession, reversion or remainder, in and to any lands, tenements, hereditaments, or annuities or rents charged upon or issuing out of them, by will. These several statutes of conveyance, descents and wills operated with like effect as the Statute of Uses operated, in regard to which Blackstone said, "the party is at once put into possession by an act of parliamentary magic." See *Shackelton* v. *Sebree et al.* 86 Ill. 616.

When the maxim above mentioned prevailed, there was reason in the requirement the husband should be held to make an actual entry in order to avail of the right of curtesy, for otherwise the wife's children or other heirs could not claim from her, and the estate must go to the heirs of the previous ancestor last actually seized; but after the changes wrought by our statutes, no such results obtained, and the rule, *cessante ratione cessat legis ipsa lex,* should be held to have applied,

thereby preserving the symmetry of our law in respect to titles to real estate.

The conclusion we have reached is in harmony with the decisions of the courts in *Guion* v. *Anderson,* 8 Humph. 320, *Reaume* v. *Chambers et al.* 22 Mo. 36, *Bush et al.* v. *Bradley,* 4 Day, 298, *Borland* v. *Marshall,* 2 Ohio St. 308, and numerous other cases.

*Third*—The deed of Isaac Ross, Maria Ross and Charlotte Powell, dated August 18, 1853, operated to convey to Robert P. Lane the life estate by the curtesy of Isaac Ross. The interest of the husband as a tenant by the curtesy initiate was a legal estate, and was both salable and assignable. It was a freehold during the lives of himself and wife, with a freehold in remainder to himself for life as a tenant by the curtesy consummate, and a remainder to the wife and her heirs in fee. (4 Am. & Eng. Encyclopedia of Law, p. 962, and authorities cited in note 1; *Lang* v. *Hitchcock,* 99 Ill. 550, and cases there cited.) It is immaterial here to inquire whether it also operated to convey to Lane the dower and quarantine rights of Charlotte Powell; but, assuming it did not, the surrender of the possession thereunder to Lane of the lands was effective as an abandonment of such quarantine rights. (*Doane* v. *Walker,* 101 Ill. 628.) The deed was, however, ineffective to convey the interest of Maria Ross, she then being a married woman, and the acknowledgment being, as the law then was, an essential part of the execution of the deed conveying her estate. The certificate of acknowledgment was defective as to her, as it did not state she was examined separate and apart from her husband, nor that the contents of the deed were made known and explained to her. In respect to her and her heirs the deed was absolutely void. *Kerr* v. *Russell,* 69 Ill. 666; *Lindley* v. *Smith et al.* 58 id. 250, and numerous other cases.

*Fourth*—It was not error to admit in testimony the various instruments of evidence offered by appellant for the purpose

of connecting the title or color of title held by appellee with the patent title, and that held by appellant. Where a defendant is in possession of the premises, and a source of title is traced to him, it is *prima facie* evidence that he is in under that title, and it devolves upon him to show to the contrary. *Holbrook* v. *Brenner*, 31 Ill. 501; *Snapp* v. *Peirce*, 24 id. 156; *McCorry* v. *King's Heirs*, 3 Humph. 267.

It remains to examine in respect to the title or color of title exhibited by appellee.

*Fifth*.—Appellee brings himself within the letter of both sections of the Limitation law of 1839, but not within their spirit. Thomas D. Robertson, from whom he holds by *mesne* conveyances, had a warranty deed from Palmer, made in 1855, and paid all the taxes assessed on the premises for eight successive years, from 1856 to 1863, both inclusive, and during all that time said premises were vacant and unoccupied; and no claim is made that such deed was not color of title made and taken in good faith. So, also, Parker, under his warranty deed from Van Nortwick, took actual possession of the lands in 1867, and conveyed to the Millers in 1869, and transferred his actual possession to them, and they continued to occupy the premises until 1872, when James F. Miller deeded to appellee, and the latter remained in actual possession until this suit was brought, in 1885, making more than fifteen years of actual possession under color of title made and acquired in good faith. Payment of all taxes assessed during these periods of actual possession by the proper parties, claiming ownership in fee, is admitted by the stipulation.

In *Kirk* v. *Smith*, 9 Wheat. 241, Chief Justice MARSHALL said: "One of the rules applicable to limitation laws which has been recognized in the courts of England and in all others where the rules established in those courts have been adopted, is, that the possession, to give title, must be adversary. The word, indeed, is not to be found in the statutes, but the plainest dictates of common justice require that it should be em-

ployed. It would shock that sense of right which must be felt equally by legislators and judges, if a possession which was permissive and entirely consistent with the title of another, should silently bar that title." In *Turner* v. *Chamberlain*, 15 Ill. 273, this court said: "To constitute an adverse possession it must be hostile in its inception, and acquired and retained under claim of title inconsistent with that of the true owner." In fact, as was said by BREWER, J., in *Dewey* v. *McLain*, 7 Kan. 130, "any other construction would operate to deprive the reversioner of his estate without his day in court, and would be, therefore, unconstitutional."

That which is in this case conclusive against the right of appellee to avail of the Statute of Limitations, is the fact that Isaac Ross, the husband of the true owner, and for whose life appellee held a life estate in the premises, did not die until March 20, 1885,—only a few months prior to the commencement of the suit. The settled doctrine, both upon authority and upon principle, is, that the possession of land by a tenant for life can not be adverse to the remainder-man or reversioner; and if he conveys to a third person, by words purporting to pass the absolute property, the possession of the purchaser is not and can not be, during the continuance of the life estate, adverse to the remainder-man or reversioner, so as to set the Statute of Limitations running against such remainder-man or reversioner; but after a life estate falls in, the possession will be adverse as to a remainder-man or reversioner. The reason of the rule first stated is, that the possession of the tenant for life, or his vendee, during the continuance of the life tenancy is, in contemplation of law, the possession of the remainder-man or reversioner, and the latter can not, during the life of the person for whose life the life estate is, bring an action against the person in possession under such life tenant, to recover possession of the premises. All statutes of limitation are based on the theory of *laches*, and no *laches* can be imputed to one who has no remedy or

right of action, and to hold the bar of the statute could run against the title of a person so circumstanced, would be subversive of justice, and would be to deprive such person of his estate without his day in court. See 1 Am. and Eng. Encyclopedia of Law, pp. 237, 238, and authorities cited in notes; *McCorry* v. *King's Heirs*, 3 Humph. 267; *Mellus* v. *Snowman*, 21 Me. 204; *Merriman's Heirs* v. *Coldwell's Heirs*, 8 B. Mon. 42; *Constantine* v. *Van Winkle*, 6 Hill, 193; *Reaume* v. *Chambers*, 22 Mo. 36; *Giddings* v. *Smith*, 15 Vt. 344; *Barrett* v. *Stradl*, 73 Wis. 385; *Orthwein* v. *Thomas et al.* 127 Ill. 554.

The language of the stipulation in this case, that appellee and his immediate grantors claimed to be the owners. in fee, is not conclusive of adverse holding. Nor were the title and possession under the warranty deeds purporting to convey the fee and the entire property, necessarily adverse. Whatever appellee and his said grantors may have considered or claimed in respect to their title, both he and they must be deemed in law, during the life of Isaac Ross, to have come in under the title which has been traced to them, and under which he and they were rightfully entitled to possession, since no different source of title is shown. *Snapp* v. *Peirce, supra; Holbrook* v. *Brenner, supra; Constantine* v. *Van Winkle, supra; Musham* v. *Musham, supra.*

*Sixth*—We do not regard that the questions of personal disability, and of the effect of the Married Woman's act of 1861, have anything whatever to do with the decision of this case. The authorities relied upon by appellee,—*i. e., Castner* v. *Walrod*, 83 Ill. 171, *Enos* v. *Buckley*, 94 id. 458, *Safford* v. *Stubbs et al.* 117 id. 389, and *Kibbe* v. *Ditto et al.* 93 U. S. 674,—are not here in point. For all the purposes of this case, Maria Ross might be regarded as though she were an adult man, and wholly exempt from any disability whatever, from the date of her marriage to the day of her death, and yet appellee could take nothing by such concession. In *Castner* v. *Walrod* it was held, that when the estate which the husband had ac-

quired by virtue of the marriage, was terminated by operation
of the Statute of Limitations, and the act of 1861 removed
the disability of coverture, the wife was bound to bring action
within seven years, or her right and title would be barred.
But there the title of Walrod, the defendant, was to the entire
property, and not to the life estate, and was not in subordina-
tion to the plaintiff's claim, but adverse to the husband's life
estate as well as to the reversion of the wife.   *Kibbe* v. *Ditto*
was a like case,—the statute first ran against the life estate
and then against the reversioner.   *Enos* v. *Buckley* is also
wholly inapplicable here.   There, the defendant, Buckley, had
not acquired the husband's estate, and his sole title, derived
by *mesne* conveyances from one Riggin, was a tax title, and
clearly adverse to the titles both of Enos and his wife.   Here,
as between the wife and her heirs, and the holders, in posses-
sion, of the husband's life estate, the duty of paying the taxes
devolved upon the latter.   Nor can *Safford* v. *Stubbs et al.* avail
appellee.   Neither Berkey, nor Reiner, his immediate grantor,
had notice that the interest of Weiser in the premises was
merely that of a life tenant, and the records did not show it.
In deciding the case, this court said: "It is claimed that
Berkey entered under a conveyance of an estate for the life of
Weiser; that his estate ceased with that life; that he then,
being lawfully in possession, became the tenant at sufferance
of Mrs. Safford and Mrs. Stubbs, the persons entitled to the
reversion, and so could not hold adversely to them.   We do
not think that this position is well taken, under the facts of
this case, Berkey having been in possession and paid taxes
for more than seven years after the life estate terminated and
the reversionary interest had attached.  *  *  *  But, having
no notice that his grantor's interest was only a tenancy *pur
autre vie*, he did not enter upon the land knowing or believing
himself to be the owner of an estate for the life of another,
and could not be considered a tenant at sufferance after the
estate for life ended.   His claim was thereafter adverse to the

reversioners, and not in subordination to their title." The plain implication from this language is, that prior to the falling in of the life estate the claim and possession of Berkey were not adverse to the title of Safford and Stubbs, but subordinate thereto. The case is but the recognition of a rule which is held in many adjudicated cases, and is thus formulated in *Barrett* v. *Stradl, supra:* "When a person enters under a deed from the person who holds the life estate, which on its face conveys an estate in fee, and when the grantor intends to convey the fee, and the grantee supposes he is getting a conveyance of the fee, the person entering under such deed holds, in fact, adversely to all the world; but he can not avail himself of the rights of an adverse possession, under the statute, as against the remainder-man, during the life of the owner of the life estate, but immediately upon the death of the person holding the life estate, such possession, if continued, becomes adverse to the remainder-man." Applying this rule to the case in hand, the title and possession of appellee only became adverse to the title of appellant when Isaac Ross deceased, on March 20, 1885.

This cause was tried without a jury, and, under the law and the evidence in the record, the finding and judgment of the court should have been in favor of appellant for an undivided one-fourth interest in the premises. The judgment is erroneous, and is reversed, and the cause is remanded for further proceedings in conformity with the views expressed in this opinion.

*Judgment reversed.*

Mr. JUSTICE BAILEY took no part in this decision.