BARRETT, Appellant, vs. STRADL, Respondent.

*January 12 — January 29, 1889.*

*Ejectment: Recovery for improvements: Title under holder of life estate: Adverse possession as against remainder-man: Presumption that possession continues to be adverse: Improvements made after notice of plaintiff's claim.*

|  |  |
|---|---|
| 73 | 385 |
| d88 | 683 |
| 73 | 385 |
| 93 | 148 |
| 73 | 385 |
| 98 | 285 |
| 98 | 304 |
| 73 | 385 |
| 106 | 149 |

1. One entering into possession of land under a conveyance from the holder of a life estate only, cannot hold adversely to the remainder-man during the continuance of the life estate.

2. But where the conveyance from the tenant for life purports to convey an estate in fee, and the grantor intended to convey the fee, and the grantee supposed he was getting the fee, the possession of the person entering under such conveyance becomes adverse to the remainder-man immediately upon the death of such life tenant.

3. Findings that during a certain time a person had the exclusive possession of land, that he claimed to be the sole owner of the premises under and by virtue of a deed thereof to him, and that he asserted his title founded on said deed in good faith, are *held* equivalent to a finding that he was in possession holding adversely under color of title asserted in good faith.

4. If the defendant in ejectment was at one time in possession of the land, holding adversely to the plaintiff under color of title asserted in good faith, and his possession continued down to the commencement of the action, it will be presumed to have continued to be adverse, in the absence of any evidence showing a change in the character of the possession in that respect.

5. Where the defendant in ejectment entered upon the possession of the premises under color of title asserted in good faith, and has held adversely to the plaintiff, he is entitled (under sec. 3096, R. S.) to recover for improvements made by him, even though they were made after he had notice of the plaintiff's claim.

APPEAL from the Circuit Court for *Manitowoc* County. The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

The appellant brought an action of ejectment in the circuit court to recover the undivided three-fifths of the W. ½ of the S. E. ¼ of section 5, town 20, range 22, in Manitowoc

county. The respondent answered the statute of limitations of ten years by adverse possession by himself and his grantors as a defense. He also set up a claim for improvements made on said lands by him during his adverse possession thereof; also a claim for the taxes paid by him on said lands during such possession.

On the trial of the action there was a special verdict, finding as follows: (1) That the plaintiff was, at the commencement of the action, the owner in fee of an undivided two-fifths of the lands described in the complaint. (2) That the plaintiff was entitled to the possession of such undivided two-fifths of said land. (3) That at the commencement of said action the defendant unlawfully withheld the possession of said two-fifths of said premises from the plaintiff. (4) Finds the value of the use of the premises described in the complaint, with all the improvements thereon, from the 5th of February, 1885, to the present time, $80 per year. (5) Finds the value of the use of said premises, as they were on the 5th of February, 1885, $30 per year. (6) That the value of the use of said premises, excluding the value of any permanent and valuable improvements made by the defendant and his grantor, Wenzel Kadlic, was $20 per year. (7) That the premises are worth at the present time $1,200 more than they would have been without the improvements made thereon by the defendant between the 5th of February, 1885, and the 20th of December, 1886. (8) Finds that the taxes paid on said lands in 1886 and 1887 were $56.71. The ninth finding is as follows: "Did the defendant in fact enter and take possession of the premises described in the complaint, under his deed from Wenzel Kadlic, claiming to be the sole and exclusive owner in fee of said premises, and asserting his said ownership under said deed in good faith?" This question was answered by the court in the affirmative. "(10) When did the defendant first have actual knowledge that the premises in ques-

tion belonged to the heirs of Catherine Barrett? *Answer*. When the circuit court decided to that effect in this action. (11) When did the defendant first have good reason to believe that the premises in question belonged to the heirs of Catherine Barrett? *A*. At the county court in November, 1886. (12) Was the defendant in the sole and exclusive possession of said premises from February 5, 1885, to the commencement of this action on the 20th of December, 1886? *A*. (By consent) Yes. (13) Did the defendant during the time specified in the twelfth question claim to be the sole and exclusive owner in fee of said premises under and by virtue of his deed from Wenzel Kadlic? *A*. Yes. (14) Did the defendant during the time specified in the twelfth question assert his title founded on the deed from Wenzel Kadlic to him, in good faith? *A*. Yes. (15) Did the defendant subsequently to February 5, 1885, ever notify the plaintiff that he disputed or denied plaintiff's title? *A*. (By the court) No."

The plaintiff requested the court to submit to the jury the following question: " During the period from February 5, 1885, until December 20, 1886, did the defendant know, while making the improvements made by him during that time, that his title to the premises in question was contested by plaintiff claiming a superior title to them?" The court refused the request, and the plaintiff excepted.

Upon the special verdict the defendant moved the court to order judgment as follows, viz.: " That, together with the judgment in plaintiff's favor for the recovery of an undivided two-fifths share, part, or interest of and in the premises described in the amended complaint, and two fifths of the rents and profits of said premises since February 5, 1885, as found by the jury, and as may be directed by the court, with plaintiff's costs for the trial of that issue, the further provision or judgment that the defendant do recover of and from the plaintiff a two-fifths share or part of the

taxes specified in said verdict, together with two fifths of the $1,200 found by the jury as the value of defendant's improvements, besides all costs incurred by the defendant upon the trial of the issue as to taxes and improvements; that plaintiff's recovery for rents and profits and costs be set off against defendant's recovery for taxes, improvements, and costs; and that the defendant be adjudged to have a lien upon the plaintiff's interest in said premises to secure the payment of the balance that may be coming to the defendant for such taxes, improvements, and costs, over and above the offset aforesaid; and that said plaintiff pay to the defendant the amount of such balance, with interest at seven per cent. per annum from the date of said verdict, within three years, as a condition of execution for the possession of the premises recovered. The court entered judgment in accordance with the terms of said motion.

The plaintiff moved for judgment on the special verdict, rejecting the answers to the seventh and eighth questions, and also made a motion to set aside the special verdict and grant a new trial, " or to set aside so much of said verdict as, or that part thereof which, relates to the question of defendant's improvements, on the following grounds: (1) That the court erred in admitting evidence against plaintiff's objections; (2) that the court erred in rejecting evidence offered by plaintiff; (3) that the court erred in refusing to submit to the jury the questions, and each of them, which the plaintiff requested the court to submit in the special verdict; (4) that the court erred in directing the jury to find that the plaintiff was the owner and entitled to the possession of an undivided two-fifths of the premises, when the evidence showed he was the owner of an undivided three-fifths of said premises; (5) that the verdict of the jury is against the weight of evidence; (6) that the said verdict is contrary to law; (7) that the answer to question 11 of said

Barrett vs. Stradl.

verdict is inconsistent with the answer to question 14 thereof; (8) that the answer to question 10 of said verdict is unmeaning, and not responsive; (9) that the court erred in directing the answer to the ninth question, said answer being unsupported by any testimony in the case; (10) that the answer to question 7 is against the weight of evidence; (11) that the answer to question 10 is against the weight of evidence; (12) that the answer to question 11 is against the weight of evidence; (13) that the answers to questions 13 and 14 are, respectively, against the weight of evidence; (14) that the answers to questions 7, 10, and 11 show prejudice and partiality on the part of said jury in favor of the defendant."

It was stipulated by the parties to the action that the question of the defendant's claim for the payment of taxes and making improvements on the premises in question should be tried at the same time and by the same jury which was impaneled to try the right of the parties to the lands in question.

For the appellant the cause was submitted on briefs by *Ellis, Greene & Merrill.* They contended, *inter alia,* that the possession of land by a tenant for life cannot be adverse to the remainder-man; and if he sells and conveys to a third person by words purporting to pass the absolute property, the possession of the purchaser is not, and cannot be, during the continuance of the life estate, adverse to the remainder-man. 1 Am. & Eng. Ency. Law, 237; R. S. sec. 2202; *Delancey v. Ganong,* 9 N. Y. 10; 1 Washb. on Real Prop. 126 (97), 118, 182; *Jackson v. Mancius,* 2 Wend. 357; *McCorry v. King's Heirs,* 39 Am. Dec. 165; Sedgw. & W. Trial of Title, 214; *Carpenter v. De Noon,* 29 Ohio St. 379; *Dennett v. Dennett,* 40 N. H. 505; *Keith v. Keith,* 80 Mo. 125; *Hanson v. Johnson,* 62 Md. 25; *Sands v. Hughes,* 53 N. Y. 287; *Pinckney v. Burrage,* 31 N. J. Law, 21; *Poor v. Larrabee,* 58 Me. 543; *Gernet v. Lynn,* 31 Pa. St. 94;

*Henly v. Wilson*, 77 N. C. 216; *Turman v. White's Heirs*,
14 B. Mon. 560; *Jones v. Billstein*, 28 Wis. 222; *Wiesner v.
Zaun*, 39 id. 189. Sec. 3096, R. S., gives claim for improve-
ments to a person only "while holding adversely." De-
fendant's claim for improvements and taxes was, therefore,
limited to those made after February 5, 1885, when the life
estate of Patrick Barrett terminated. The same result fol-
lows from the doctrine that a tenant for life cannot charge
the remainder-man or reversioner with improvements or
ordinary taxes. 1 Washb. on Real Prop. 123 (95), 124 (96);
*Phelan v. Boylan*, 25 Wis. 679; *Curtis v. Fowler*, 33 N. W.
Rep. (Mich.), 804. The court also rightly ruled that there
could be no recovery for improvements made after the
commencement of the action, on December 20, 1886.
*Welles v. Newson*, 40 N. W. Rep. (Iowa), 105.

The verdict does not determine the issue whether the de-
fendant held *adversely* between the dates above mentioned.
"Holding adversely" must mean something more than
holding "under color of title asserted in good faith," for
the statute requires it in addition. The phrase has a settled
legal meaning, viz., possession which, if continued the pre-
scribed time, would give title under the statute of limita-
tions. The essence of such possession is *hostility* to the
true owner. Sedgw. & W. Trial of Title, sec. 749; 1 Am.
& Eng. Ency. Law, 228; 3 Washb. on Real Prop. 134 (489);
*Whiting v. Edmunds*, 94 N. Y. 309; *Thompson v. Felton*,
54 Cal. 547; *Sparrow v. Hovey*, 44 Mich. 63; *Rung v.
Shoneberger*, 26 Am. Dec. 95; *Putnam Free School v.
Fischer*, 38 Me. 324; *Grant v. Fowler*, 39 N. H. 101; *Hodges
v. Eddy*, 38 Vt. 344. Possession begun in subserviency can
never become adverse to the true owner until surrender or
disclaimer, although a person has exclusive possession
under absolute conveyance from the first occupant, and
claims absolute title in good faith. *Whiting v. Edmunds*,
94 N. Y. 309; *Quinn v. Quinn*, 27 Wis. 168; *Wright v.

*Sperry,* 25 id. 617; *Maxwell v. Hartman,* 50 id. 660; *Schwallback v. C., M. & St. P. R. Co.* 69 Wis. 298; *S. C.* 73 id. 137.

The defendant's possession after February 5, 1885, was not adverse, because he was then a tenant by sufferance. In New York it is held that if a person claiming under a tenant for life created by law holds over he is not a tenant by sufferance, but a trespasser, and his possession may be adverse. *Livingston v. Tanner,* 14 N. Y. 64; *Jackson v. Harsen,* 7 Cow. 323; *Sands v. Hughes,* 53 N. Y. 287. But, as appears in *Livingston v. Tanner,* a statute in that state makes such a person a trespasser. At common law he is a tenant by sufferance, and so under our statutes. Wood on Landl. & T. sec. 6; Platt on Leases, 97; *Miller v. Manwaring,* Cro. Car. 397; Com. Dig. ESTATE, 1; *Griffin v. Sheffield,* 38 Miss. 390; R. S. secs. 2180, 2183, 2186. Such a tenant cannot hold adversely until he surrenders possession or disclaims. Smith on Landl. & T. 31; Fawcett on Landl. & T. 49; *Austin v. Wilson,* 46 Iowa, 362; *Creigh's Heirs v. Henson,* 10 Grat. 231; *Whiting v. Edmunds,* 94 N. Y. 309.

One who has knowledge of an adverse claim cannot recover for improvements made after such knowledge. 1 Am. & Eng. Ency. Law, 294; *Witt v. Trustees,* 55 Wis. 376, 380; *Woodhull v. Rosenthal,* 61 N. Y. 382; *Gordon v. Tweedy,* 74 Ala. 232; Sedgw. & W. Trial of Title, sec. 694; *Green v. Biddle,* 8 Wheat. 1; *Canal Bank v. Hudson,* 111 U. S. 66; *Haslett v. Crain,* 85 Ill. 129; *Morrison v. Robinson,* 31 Pa. St. 456; *Hatchett v. Conner,* 30 Tex. 104; *Cole v. Johnson,* 53 Miss. 94; *Whitney v. Richardson,* 31 Vt. 300; *Henderson v. McPike,* 35 Mo. 255; *Bright v. Boyd,* 1 Story, 487; *Putnam v. Ritchie,* 6 Paige, 390; 2 Story's Eq. Jur. secs. 799*a,* 799*b; Dawson v. Grow,* 29 W. Va. 333; *Holmes v. McGee,* 64 Miss. 129; *Rennie v. Young,* 2 De G. & J. 136; *Dart v. Hercules,* 57 Ill. 446.

For the respondent there was a brief by *Nash & Nash,*

and oral argument by *L. J. Nash.* They argued, among other things, that the adverse possession referred to in sec. 3096, R. S., is not precisely the same thing as the adverse possession referred to in the statute of limitations; and one who holds actually a limited estate, but in good faith believes he is in possession under title in fee, may recover for improvements made during the continuance of the limited estate. *Plimpton v. Plimpton,* 12 Cush. 458; *Wales v. Coffin,* 100 Mass. 177; *Bedell v. Shaw,* 59 N. Y. 46. So, also, the "good faith" which will entitle one to protection as a *bona fide* purchaser of land without notice of another's rights, is not the same thing as the "good faith" which will entitle the same person to maintain his claim for improvements placed on the land. *Hadley v. Stewart,* 65 Wis. 481. It was error to rule as matter of law that defendant could recover nothing for improvements made after the commencement of the action. *Zwietusch v. Watkins,* 61 Wis. 615. The findings establish an adverse holding within the rule in *Stevens v. Brooks,* 24 Wis. 326; *Sydnor v. Palmer,* 29 id. 227; *Jackson v. Smith,* 13 Johns. 406; *Finn v. Wis. R. Land Co.* 72 Wis. 546.

TAYLOR, J. The material facts as to the title of the lands in question are as follows: Patrick Barrett, the father of plaintiff, became possessed of, and the owner in fee of, the the lands described in the complaint in 1856. In 1874 he conveyed by warranty deed to his son-in-law John Nash, and three days after the conveyance to Nash he (Nash) conveyed the same land to Catherine Barrett, the wife of said Patrick Barrett, and plaintiff's mother. The mother died intestate in June, 1875, while living on the premises, and without having conveyed the same. Patrick Barrett, the father and husband, also lived on the land with his wife, Catherine Barrett, at the time of her death, and continued to occupy said land after the death of his wife until

February 7, 1877, when he conveyed by warranty deed to one Wenzel Kadlic, for the consideration of $2,100, taking a mortgage in part payment for the sum of $1,600. Kadlic occupied the premises until the year 1880, and on April 19, 1880, he conveyed the land to the defendant by warranty deed, for the sum of $1,650, and as a part of this consideration the defendant assumed the payment of the $1,600 mortgage given by Kadlic to Barrett. Upon receiving this deed the defendant went into the immediate possession of the land, claiming to own the same, and he remained in possession up to the present time, making permanent improvements on the land, and has made payments on the $1,600 mortgage so as to reduce the amount of the same to $1,200 or less when this action was commenced. Patrick Barrett died on February 5, 1885.

These facts show that Patrick Barrett at the time he sold the premises to Kadlic had only a life estate in the same as a tenant by the curtesy of his wife, Catherine Barrett. There is no contention on the part of the defendant and respondent but that the plaintiff was the owner of the undivided two-fifths of the premises at the time this action was commenced, nor that the defendant withheld the possession from him as alleged in his complaint. The real controversy between the parties is whether the possession of the defendant was of such a character as to entitle him to recover for permanent improvements made by him on the lands, under sec. 3096, R. S. 1878. The part of the section applicable to the controversy in this case reads as follows: " In every case where a recovery shall be had of any land, on which the party in possession, or those under whom he claims, while holding adversely by color of title asserted in good faith, founded on descent or any written instrument, shall have made permanent and valuable improvements, or shall have paid taxes assessed, such party, for himself and for the benefit of those under whom he

claims, shall be entitled to have from the plaintiff, his heirs or assigns, if he insist upon his recovery, the value of such improvements at the time the verdict or decision against him is given, and the amount paid for taxes, with interest from the date of the payment, to be assessed and recovered as hereinafter provided, and for the payment thereof shall have a lien on the real estate so recovered." Under this section the court below held that the defendant could only recover, in any event, for improvements made by the defendant on said lands, and for the taxes paid thereon, between the date of the death of Patrick Barrett and the date of the commencement of this action.

The principal contention of the learned counsel for the appellant is that the defendant cannot set up that he was in possession holding adversely by color of title asserted in good faith, because he entered and held by a conveyance from the grantee of Patrick Barrett, who had only a life estate in the premises, made during the life-time of said Barrett. The claim of the learned counsel is that one who enters upon the possession of real estate by deed from a person holding only a life estate in the premises cannot, so far, at least, as those entitled to the reversion are concerned, be in possession under claim of title, holding adversely to them, within the meaning of the statute. The learned circuit judge held with the counsel for the plaintiff so far as to hold that the possession of the defendant could not be adverse as against those owning the reversion during the life-time of the person owning the life estate, either for the purpose of establishing a title to the land by adverse possession, or for establishing a claim for improvements made on the land during the life of such person; and on the trial limited the defendant in his claim for improvements and taxes to such as were made and paid after the death of Barrett, the owner of the life estate, and before the commencement of plaintiff's action.

The contention of the learned counsel for the appellant, that a person entering into the possession of land under a conveyance from a person having only a life estate therein cannot hold adversely to the person entitled to the remainder, during the life-time of the person owning the life estate, so as to set the statute of limitations running against the remainder-man, is well settled by the authorities in other states, and is fully recognized by this court. See *Wiesner v. Zaun*, 39 Wis. 189. The reason of this rule is based upon the fact that the remainder-man cannot, during the life of the person holding the life estate, bring an action against the person in possession under such life tenant, to recover possession of the premises; and it would be absurd, therefore, to bar the right of the remainder-man by a possession which he has no right to object to, and to prevent which he has no remedy by action.

We think it is equally well settled that when a person enters under a deed from the person who holds the life estate, which on its face conveys an estate in fee, and when the grantor intends to convey the fee, and the grantee supposes he is getting a conveyance of the fee, the person entering under such deed holds *in fact* adversely to all the world, but he cannot avail himself of the rights of an adverse possession under the statute as against the remainder-man during the life of the owner of the life estate, but immediately upon the death of the person holding the life estate such possession, if continued, becomes adverse to the remainder-man. In the language of the court in *Sands v. Hughes*, 53 N. Y. 294: " There is no rule which prevents a hostile title being acquired, or an adverse possession being originated, during the running of an assessment lease (granting a limited estate), which possession would ripen into a title in twenty years after the end of the lease." See, also, *Christie v. Gage*, 71 N. Y. 193; *Millard v. McMullin*, 68 N. Y. 345; *Fleming v. Burnham*, 100 N. Y. 1, 8, 12; *Jackson v. Schoonmaker*, 4

Johns. 402; *Clarke v. Hughes*, 13 Barb. 147; *Miller v. Ewing*, 6 Cush. 34; *Jackson v. Harsen*, 7 Cow. 323, 327; *Gernet v. Lynn*, 31 Pa. St. 94; 1 Am. & Eng. Ency. Law, 237, and cases cited in note 1, and 238, note 2. The rule established in the cases above cited was adopted by this court in the case of *Wiesner v. Zaun*, 39 Wis. 188, 203, 204. The reason of the latter rule is that immediately on the death of the life tenant the remainder-man may maintain an action to recover the possession from the person in possession claiming adversely.

The rule invoked by the counsel for the appellant, that a person entering under a tenant in possession, even though he take a deed in fee, cannot hold adversely to the landlord, does not apply to the case of a person entering under a deed from a person in possession owning a life estate. This rule only applies to the case where the person in possession holds the conventional relation of tenant to the owner of the fee, and not to the case of a person holding a life or other limited estate derived from some other source than from the owner of the reversion. On this point see *Saunders v. Hanes*, 44 N. Y. 365; *Christie v. Gage*, 71 N. Y. 193; *Jackson v. Harsen*, 7 Cow. 323, 326.

The above authorities clearly negative the claim made by the learned counsel for the appellant that the defendant produced no evidence on the trial which tended to show that he was in possession of the premises, holding them adversely to the claim of the plaintiff, at the time he made the improvements for which he claimed pay.

It is further urged by the learned counsel for the appellant that the special verdict is imperfect in not expressly finding that the defendant was in possession holding adversely to the plaintiff at the time the improvements were made. On the part of the respondent it is claimed that there was no request that such a finding should be included in the special verdict. It is also insisted that the findings num-

bered 12, 13, and 14 are equivalent to an express finding of the fact that the defendant was in possession holding adversely to the claim of the plaintiff when the improvements for which he was allowed were made.   These findings, if sustained by the evidence, show that during the time in question the defendant had exclusive possession of the premises, that he claimed to be the sole owner thereof under and by virtue of the deed to him from Kadlic, and that he asserted his title founded on said deed in good faith.   We are clearly of the opinion that these findings are equivalent to an express finding that he was in possession, holding adversely under color of title asserted in good faith, when the improvements were made.

The only other question bearing upon this point is whether these findings are supported by the evidence.   It seems to us that the evidence is clear and undisputed that the defendant, when he bought the land from Kadlic, believed he was getting a good title in fee to the premises. He paid a full consideration for a perfect title in fee, and he testifies that he paid a man to examine the title for him previous to his purchase, and that such person reported to him that the title was perfect, and the deed given and taken was a deed purporting to convey the estate in fee. After his purchase, and down to the death of the tenant for life, his assertion of title was constant, as evidenced by his possession and his continuing to pay upon the mortgage he had assumed to pay as a part of the purchase price.   There certainly is no evidence which tends to show that he abandoned his claim of title under his deed from Kadlic, and all the evidence shows that his possession continued under claim and color of title under said deed after the death of Barrett, the owner of the life estate.   Such possession was therefore adverse to the claim of the plaintiff after the death of Barrett, by all the authorities.

It is further insisted by counsel for appellant that the

evidence shows conclusively that not long after the death of Barrett the defendant became possessed of such facts regarding the defect of his own title and the validity of the title of plaintiff, that he could not thereafter hold adversely to the claim of the plaintiff, and consequently the improvements made were not recoverable under the statute. If the evidence in the case shows, as it clearly does, that there was a time when the defendant was in possession of the land in question, holding adversely to the plaintiff under color of title asserted in good faith, and such possession continued down to the commencement of the action, it will be presumed to have continued an adverse holding, unless some evidence is produced which shows that the character of the possession was changed to one recognizing the title of the plaintiff. Whether there was such a change in the relation of the defendant to plaintiff previous to his making the improvements for which he recovered compensation was a question of fact for the jury. After reading the evidence, we are not prepared to say that the claim of the plaintiff is clearly established. The record would seem to indicate that the case was tried on the part of the plaintiff, upon the theory that, if the defendant had at any time notice that the plaintiff claimed to own the land in controversy, no improvements made on the land after such notice by the defendant could be made a charge against the plaintiff. This is clearly indicated by the request made by the plaintiff to submit to the jury the following question: "During the period from February 5, 1885, until December 20, 1886, did the defendant know, while making the improvements made by him during that time, that his title to the premises in question was contested or disputed by plaintiff claiming a superior title to them?" This question was not submitted, and under the decisions of this court it was an immaterial question. See *Zwietusch v. Watkins*, 61 Wis. 615, 620. To defeat a claim for improvements under the statute,

when the evidence shows that the defendant entered under color of title asserted in good faith and has held adversely to the plaintiff, the evidence must show that the adverse possession is no longer asserted in good faith; that is, that the adverse possession has been interrupted in some way, either by abandonment or otherwise, so that the continued possession is no longer adverse to the real owner. That notice of claim of superior title by the plaintiff, or the commencement of an action to recover the premises, does not in itself interrupt the adverse possession of the defendant or change his attitude in regard to his adverse claim, is fully sustained by the decisions of courts outside of this state, as well as by the decisions of this court in the case of *Zwietusch v. Watkins*, 61 Wis. 615. *Workman v. Guthrie*, 29 Pa. St. 495, 513; *Moore v. Greene*, 19 How. 71; *Langford v. Poppe*, 56 Cal. 73, 76; *Jackson v. Haviland*, 13 Johns. 229, 234; *Kennedy's Heirs v. Reynolds*, 27 Ala. 364; *Ferguson v. Bartholomew*, 67 Mo. 212. Upon this point of notice of an adverse claim as affecting the good faith of the party claiming to hold adversely, see, also, *Warren v. Putnam*, 68 Wis. 481, 488; *Fleming v. Sherry*, 72 Wis. 503, 507, 508.

It is the entry upon the possession under the color of title asserted in good faith which creates the possession which entitles the possessor to recover for his improvements; and it is unnecessary that the person making the entry should believe that his title was superior to every other title to the property at the time of making his entry, in order to make his possession adverse; nor does a subsequently acquired knowledge that there is a better title in some other person necessarily change the nature of his possession from an adverse possession to a possession subordinate to the true title. In order to change the nature of the possession, there must not only be a knowledge that there is a better title, but there must be an express or implied yielding to such superior title. 1 Am. & Eng. Ency. Law, 277, 279, 292; *Doth-*

*ard v. Denson,* 72 Ala. 541, 545; *McCagg v. Heacock,* 42 Ill. 157; *Rawson v. Fox,* 65 Ill. 200; *Russell v. Mandell,* 73 Ill. 136, 137; *Smith v. Ferguson,* 91 Ill. 304, 311; *Stubblefield v. Borders,* 92 Ill. 279; *Ewing v. Burnet,* 11 Pet. 41; *Wright v. Mattison,* 18 How. 50, 57; *Pillow v. Roberts,* 13 How. 472. The cases cited by the learned counsel for the appellant, which hold that the defendant cannot recover for improvements made after he has knowledge of an adverse claim, were cases arising under statutes differing from ours. This is especially so with cases in Illinois. See 1 Starr & C. Ann. Stats. Ill. 994. The Illinois statute expressly provides that the defendant shall not recover for improvements made after notice of the claim of the real owner, and it also defines what shall constitute such notice. It must be admitted that what would constitute an adverse possession so as to set the statute running in favor of the possessor against the real owner, under sec. 4211, R. S., might not be sufficient to constitute such an adverse possession as would entitle the possessor to recover for improvements, under sec. 3096, R. S. Under sec. 4211, an entry under color of title, claiming title exclusive of any other right, is all that is required. Under sec. 3096, the possessor must hold by color of title asserted in good faith. It seems to us very clear, from all the evidence in the case, that the defendant took possession of said lands by color of title, and that he asserted that title in good faith, and that such claim and assertion of title was not abandoned by the defendant before this action was commenced, and, if we are to believe he verified his answer believing it to be true, he asserted such title after the commencement of this action.

It is urged by the counsel for the appellant that the evidence clearly shows that the defendant had, before making the improvements on the land for which he has recovered, abandoned his adverse holding and recognized the ownership and title of the plaintiff. The jury have found against

this claim, and upon the whole evidence we cannot say the finding of the jury on this point is wholly unsupported by the evidence.

It is also urged that the jury assessed the improvements at a sum greatly in excess of their real value to the farm. We can only say that the verdict is sustained by the evidence introduced by the defendant, and, the circuit judge having refused to set aside the verdict on that ground, we do not feel authorized to reverse the judgment for that cause.

*By the Court.*— The judgment of the circuit court is affirmed.