Frances McCoy, Appellee, v. Montgomery Ward and Company, Inc., and Thomas P. Riordan, Appellants.

Gen. No. 9,066.

Opinion filed September 3, 1936.

EARLY & EARLY, of Rockford, for appellants.

RYAN & HOOD, of Rockford, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.

On and prior to March 29, 1930, E. C. Stockburger was in the business of loaning money, selling notes secured by mortgages and trust deeds, writing insurance and doing a general real estate business in Rockford as the Stockburger Agency. Frances McCoy, a widow, had written him that she had $1,150 to invest in trust

deeds on Rockford property and on that day the Stock-
burger Agency advised her that if she would send the
money to them, they would issue to her an interest bear-
ing receipt and would procure such a loan as she de-
sired within a short time. On April 1, 1930, Mrs.
McCoy sent him the $1,150 and on June 10, 1930, he
mailed to her a note of that date for $1,150, executed
by Carl E. Larson, payable to bearer, one year after
date, and advised her that it was secured by a mort-
gage upon property worth about $2,600 owned and
occupied by Mr. Larson. The note was secured by a
trust deed executed by Larson and his wife upon lots
13, 14, 26 and 27 of block three of a subdivision known
as Palmwood acres, a couple of miles outside the city
limits of Rockford. The trust deed was duly recorded
and it and the abstract of title were retained by Stock-
burger and the note was held by Mrs. McCoy. On
December 23, 1930, Larson executed another note for
$650 to Stockburger and he and his wife, to secure its
payment, executed their trust deed on lots one and two
in the same subdivision. On the same day Stockburger
executed a release of the trust deed of June 10, 1930 as
to lot 13 therein described and this release was duly
filed for record on the following day and upon this lot
Larson commenced the construction of a dwelling and
on January 6, 1931, executed a note for $4,700 securing
its payment by a trust deed on said lot 13 to Thos. P.
Riordan, trustee. Mrs. McCoy never authorized the
release of lot 13, did not receive the $650 or any part
thereof and knew nothing of the release or the transac-
tion in connection therewith until June, 1933. In Janu-
ary, 1932, Stockburger sent her $22.75, which, with
other amounts she had received from him, paid her in-
terest on the principal sum of $1,150 in full to Decem-
ber 10, 1931. This was the last payment Mrs. McCoy
ever received, Stockburger having absconded on May 9,
1932, being short in many of his accounts. He was ad-

judicated a bankrupt and Mrs. McCoy received her trust deed and abstract from his trustee in bankruptcy.

This suit was thereupon filed by Mrs. McCoy to foreclose her trust deed upon the four lots therein described. The complaint alleged that the release of lot 13 was without her knowledge or consent, that she received no consideration therefor, and that it was fraudulently executed and placed on record by Stockburger. The complaint set forth the execution of the trust deed by Larson to Riordan and made him and all subsequent grantees parties defendant. Riordan answered denying that the partial release was unlawful and averring that Larson paid Stockburger as the duly authorized agent of the plaintiff $650 in payment for said release and averred that his trust deed was a first and prior lien on said lot 13. The answer further averred that at the time the McCoy mortgage was made lot 13 was only improved by an old building and that its value as so improved was not to exceed $300 and that therefore the lien of the plaintiff therein cannot exceed that sum. It was further averred in the answer that subsequent to the making of the McCoy mortgage lot 13 has been improved by the expenditure of $4,700 so secured by the Riordan trust deed. After the issues were so made up, a hearing was had resulting in a decree finding that there was due the plaintiff $1,572, that the release as to lot 13 was invalid as to the plaintiff and in default of paying the amount so found due that lots 14, 26 and 27 should first be offered for sale and in the event that they do not bring an amount sufficient to pay the amount so found due the plaintiff and costs, that then lot 13 be sold. From this decree an appeal has been prosecuted to this court.

Counsel for appellant insist that the release of lot 13 by Stockburger was valid as he, Stockburger, was then the agent of appellee and authorized to invest and collect her funds and that when Larson paid $650 on

December 23, 1930 for the release of lot 13, Stockburger immediately reinvested it in a new loan to Larson and it was this loan secured by a trust deed on Lots one and two of Palmwood acres which Stockburger embezzled and failed to account for and there was therefore a valuable consideration paid to appellee for the release of lot thirteen. The trouble with this argument is that it is not based upon any evidence in the record. Stockburger was not the agent of appellee and he was not authorized by her to collect her money and he was not acting for her on December 23, 1930, when he accepted a trust deed from Larson on lots one and two, and she knew nothing about it. See *Culhane v. Layman,* 273 Ill. App. 557. Neither the note which appellee held nor the accompanying trust deed contained any prepayment privilege and the note was not due for almost six months after the release of lot thirteen was executed. In *Kennell v. Herbert,* 342 Ill. 464, it was held that where a release is executed by a trustee before the maturity of the indebtedness it was given to secure, and the trust deed contained no prepayment privilege that the trustee had no authority to receive payments on the note or execute a release of the trust deed. See also *Marsh v. Stover,* 363 Ill. 490.

It is further insisted by counsel for appellants that inasmuch as the evidence discloses that lot 13 at the time the trust deed was executed in June, 1930, and also at the time the release was executed in December of that year was not worth more than $300 and that at the time the suit was instituted said lot would not have had a value of more than $50 if the improvements which were made by appellants had not been made, that the chancellor should have decreed that upon the payment to appellee by appellants of $300, that lot 13 should be released from the operation of appellee's mortgage. In support of this contention, our attention is called to the cases of *Miller v. Thomas,* 14 Ill. 428; *Worth v. Worth,* 84 Ill. 442; *Cable v. Ellis,* 120 Ill. 136, and *Clark*

*v. Leavitt,* 335 Ill. 184. We have examined these cases and what the court there decided was that as a general rule permanent improvements made upon real estate by one who has no interest in the premises and without the consent of the owner become a part of the realty and vest in the owner but an allowance for such permanent improvements may be made by a court of equity where such permanent improvements are made in good faith by one in possession without notice of defects in his title, believing himself, and justified in such belief, to be a bona fide owner. This is what the court in *Cable v. Ellis, supra,* said was the true rule and after citing various Illinois cases, continued: ''There is, however, no principle of law permitting the owner or mortgagor, or his grantee, or a subsequent purchaser with notice of prior equities of first purchaser, to make improvements on the premises and have a prior lien therefor but such improvements will pass upon sale of the premises.'' Citing among other cases *Martin v. Beatty,* 54 Ill. 100. The *Martin* case was a foreclosure proceeding and it was held that a subsequent grantee of the mortgagor could not be reimbursed for improvements made upon the mortgaged premises. In Jones on Mortgages, Vol. 1, sec. 203, the author lays down the rule that a lien of a mortgage extends to all improvements subsequently made on the mortgaged premises whether made by the mortgagor or by a purchaser from him without actual notice of the existence of the mortgage. And in *Powell v. Rogers,* 11 Ill. App. 98, it is said that a mortgagor or other person making improvements on land subject to a mortgage does so for the benefit of the mortgagee and it makes no difference that the party making the improvements supposed the title to be good.

Appellants argue, however, that appellee should not be permitted to unjustly enrich herself at the expense of appellants; that they, appellants, at no time had any actual notice of the fraud of Stockburger in releasing lot 13 and that the only notice they did have was the

constructive notice which the record itself disclosed, and it is contended that such constructive notice alone is not sufficient to disentitle them, as bona fide purchasers, to be compensated for their improvements in this proceeding. Such is the holding of *Warwick v. Harvey,* 158 Md. 457, 148 Atl. 592, 68 A. L. R. 284, and the author of the annotation following that case in 68 A. L. R. at page 288 states: ''By the weight of authority it is held that constructive notice from the record of the existence of a paramount title or interest, does not deprive an occupying claimant of the right to be reimbursed for his improvements on being ejected from the premises.'' In support of this majority rule, cases from Arkansas, Indiana, Iowa, Kentucky, Louisiana, Maryland, Michigan, Minnesota, Mississippi, Missouri, North Carolina, Tennessee, Vermont, Washington, Wisconsin and several Federal cases are cited. The author of the same annotation, however, on page 291 of the same volume then states the minority rule to be that constructive notice of an adverse claim to land is held to be as efficacious as actual notice, to preclude a recovery for improvements made by an occupying claimant and among the states listed as so holding is Illinois and the cases of *Mettler v. Craft,* 39 Ill. App. 193, *Clark v. Leavitt, supra, Montag v. Linn,* 27 Ill. 328, and *Lagger v. Mutual Union Loan & Bldg. Ass'n,* 146 Ill. 283, are cited.

In the instant case Larson's title to lot 13 was of record and open to inspection. If appellants, when the Riordan trust deed was executed by Larson, examined the record, it then disclosed that this lot, with others, was conveyed by the owner to Stockburger as trustee on June 10, 1930 to secure the payment of $1,150 due one year later. The record disclosed further that on December 23, 1930, Stockburger, a trustee, released this lot from the operation of that conveyance. If appellants concluded from this record that Larson had an

unincumbered title and that the Riordan trust deed was a first lien upon the premises, they were mistaken, not on a question of fact but on a question of law as under the law Stockburger's purported release was void and under the authorities in this state, appellants are bound by the constructive notice as disclosed by the record just as much as if they had had actual notice of appellee's lien.

It is true that appellants assumed that the Stockburger release was valid and loaned $4,700 to Larson and secured the payment thereof by the Riordan trust deed. The record discloses that Larson expended this money in the erection of a dwelling upon this lot and that shortly thereafter he defaulted in making the payments provided in said trust deed and subsequently made a conveyance to some of appellants. Photographs of lot 13 before and after the improvements were introduced upon the hearing and we have examined them in the record, and while the result is that appellee obtained an advantage because Stockburger wrongfully and without authority executed what purported to be a release of her mortgage on lot 13, still the law is well settled in this State that Larson, who made these improvements, made them upon this lot which was then subject to appellee's mortgage, and it makes no difference even if he and appellants, who furnished the money, supposed the lien of appellee's mortgage had been released. *Powell v. Rogers, supra.* The law presumes that every one not only knows the law but that he examines the title to real estate before purchasing or receiving a mortgage. *Campbell v. McCahan,* 41 Ill. 45. The decree is in consonance with the authorities and should be affirmed.

*Decree affirmed.*