R. F. GEHRKE SHEET METAL WORKS, a copartnership, Respondent, vs. MAHL and others, Appellants.

*February 6—April 15, 1941.*

For the appellants there were briefs by *Winter & Koehler* of Shawano, and oral argument by *P. J. Winter*.

For the respondent there were briefs by *Fischer, Brunner & Strossenreuther* of Shawano, and oral argument by O. B. *Strossenreuther*.

A brief was also filed by *Ralph M. Hoyt* of Milwaukee, as *amicus curiæ*.

ROSENBERRY, C. J.  Upon the merits the sole error assigned by the appellant is—

"That the court erred in adjudging that all the judgments mentioned in the complaint and which were docketed subsequent to the recording of the deed from Mahl to the First National Bank, and conveyed to the defendant, Anna Ramthun, were liens against such lands and established as such."

The assignment is based on the fact that Claus Mahl conveyed the lands prior to the docketing of the judgment.  As a result it is claimed that the judgments against Claus Mahl did not become liens because he had no interest in the land subject to a lien.  It is claimed that in any case Anna Ramthun was a *bona fide* purchaser and protected as such by the recording act.

A consideration of the arguments made in support of the assignment and in opposition to it raised some questions in the mind of the court that did not seem to be sufficiently considered in the briefs.  In aid of the court additional briefs were requested of the parties upon a stated question.  At the request of the court, Ralph M. Hoyt, Esq., of the Milwaukee bar, furnished the court with a brief *amicus curiæ*.  The question submitted was not intended to be a statement of the facts in this case but rather to direct attention of counsel to matters not dealt with in the principal briefs.  Counsel on both sides filed additional briefs.  Counsel for the defendants, in spite of explicit directions to the contrary, chose to modify the question and reargue the case.  Counsel *amicus curiæ,* however, supplied the court with a complete analysis of the entire problem.  Counsel for the appellants was given an opportunity to reply to the brief *amicus curiæ*.

The deed from Claus Mahl to the bank having been given to secure obligations of Claus Mahl, it was under the authori-

ties as between the parties and those having notice, a mortgage. Upon that proposition there is no disagreement. *Brinkman v. Jones* (1878), 44 Wis. 498; *Schroeder v. Arcade Theater Co.* (1921) 175 Wis. 79, 184 N. W. 542.

As between the grantor and the grantee and those having actual notice, the legal title remained in the grantor, and in case of default would have to be enforced like an ordinary mortgage. *Schroeder v. Arcade Theater Co., supra; Brinkman v. Jones, supra.*

However, the defendants argue that Anna Ramthun was a *bona fide* purchaser and as such took good title under the recording act (sec. 235.49, Stats.). This contention raises two questions: First, Were the judgments when docketed a lien upon the interest of Claus Mahl in the lands in question? Second, Did Anna Ramthun have actual notice of the interest of Claus Mahl in the lands in question?

The docketing of a judgment is not notice at common law or under any statute of this state to anybody dealing with the judgment debtor. *Bartz v. Paff* (1897), 95 Wis. 95, 69 N. W. 297.

By the provisions of sec. 270.79 (1), Stats.,—

"Every judgment when properly docketed . . . shall, for ten years from the date of the rendition thereof, be a lien on the real property in the county where docketed . . . of every person against whom it is rendered and docketed, which he has at the time of docketing or which he acquires thereafter within said ten years. . . ."

Under similar statutes it has been held that judgments are liens upon unrecorded as well as recorded title of the judgment debtor. *Macauley v. Smith* (1892), 132 N. Y. 524, 30 N. E. 997; *Marston v. Williams* (1890), 45 Minn. 116, 47 N. W. 644; *Emerson-Brantingham Implement Co. v. Cook* (1925), 165 Minn. 198, 206 N. W. 170. See note to this case, 43 A. L. R. 44.

Sec. 235.51 of the statutes is as follows:

"235.51 *When deed not defeated by defeasance*. When a deed purports to be an absolute conveyance in terms, but is made or intended to be made defeasible by force of a deed of defeasance or other instrument for that purpose, the original conveyance shall not be thereby defeated or affected as against any person other than the maker of the defeasance or his heirs or devisees or persons having actual notice thereof, unless the instrument of defeasance shall have been recorded in the office of the register of deeds of the county where the lands lie."

This statute does not in terms apply to the situation disclosed by the facts in this case. The conveyance in this case was not "made defeasible by force of a deed of defeasance or other instrument for that purpose." The title of the grantee was defeasible in this case if at all by reason of an oral understanding between the parties that the deed was given as security for the discharge of the grantor's obligations. The statute does, however, declare a principle of law which should apply to a situation such as this, on the principle that the greater includes the lesser. As the court said in *Brinkman v. Jones, supra* (p. 520):

"We can see no good reason why a person who has taken a defeasance in writing which makes an absolute deed a mortgage, should stand in a worse position than the man who makes an absolute deed, which, by a purely parol agreement, is proved to be a mortgage; yet in such case, as the section referred to does not and cannot apply, the right of the party claiming the estate against an absolute deed by a defeasance of a less degree of dignity in the law, would be protected against a subsequent grantee, upon proof of notice of his rights; and in that case, there being no statute on the subject, proof of knowledge of such facts as would put a prudent man upon inquiry, and render it fraudulent for him to purchase without making inquiry, would be sufficient."

Under any theory, whether under the statute or under the common law, the question in this case is whether Anna

Ramthun had actual notice of the state of the title of Claus Mahl. The trial court found that she "knew or had knowledge of facts sufficient to put her on inquiry as to the interest of Claus Mahl in the property." That knowledge, under the doctrine laid down in *Brinkman v. Jones, supra,* amounts to actual notice. However, the defendants contend that the evidence does not sustain the finding. The consideration for the transfer of the title to Anna Ramthun was an indebtedness owing by her father, Claus Mahl, to her. She paid no consideration to the bank for the conveyance. She could not help but know that she was receiving something from her father in satisfaction of the debt which he owed to her. The only thing she received was the conveyance of the lands in question. The only thing that she did not know was that judgments had been rendered against her father prior to the time of the conveyance of the land to her. Waiving consideration of the fact that the consideration she gave was antecedent, she was in the position of a purchaser of the lands in question, the legal title to which was conveyed to her. Being a purchaser of the lands she was bound to ascertain at her peril whether there were judgments against her father. While the question has not been considered by this court it is held by the great weight of authority that the lien of a judgment is superior to all conveyances of and liens on the debtor's land which are made or accrue after the judgment lien has attached. See 34 C. J. p. 611, § 928, and cases cited in note 48.

While it is true that the conveyance was not made by Claus Mahl, it was a conveyance made by the bank at his direction and for his benefit. Having received the lands in satisfaction of the debt owing her by her father, Anna Ramthun cannot say that she did not know her father had an interest in the lands. The evidence amply sustains the finding of the trial court.

Under our statute, while the docketing of a judgment is not notice to those subsequently dealing with the judgment

debtor, the lien of a judgment attaches to the real property of the debtor at the time of the docketing. Inasmuch as a subsequent conveyance by the judgment debtor does not defeat the lien, purchasers of lands must search the record for judgments against the debtor at their peril. So here the defendant, Anna Ramthun, was acquiring an interest which belonged to her father, and while she had no notice of the docketing of the judgment which was a lien upon his interest in the land, she was under obligation to ascertain at her peril whether there were outstanding judgments.

In this case the trial court held that the lien of the judgments was subordinate to the mortgage given by Anna Ramthun to the Home Loan & Investment Company in the amount of $1,000, on the theory that the Home Loan & Investment Company, the holder of the mortgage, had no knowledge of facts which would indicate to them that deeds to the bank were only mortgages and therefore no actual notice.

The court also found that the mortgage owned by the Home Owners' Loan Corporation was subordinate to the liens of the judgments because the mortgagee had knowledge of facts sufficient to put it upon inquiry and therefore actual notice. No question is raised with respect to these holdings. We state the facts simply to illustrate how the court applied the law in this case.

It is considered that the conclusions reached by the trial court were correct, and the judgment must be affirmed.

*By the Court.*—Judgment affirmed, the respondents not to tax costs for the additional brief for the reason that it was not responsive to the question propounded by the court.