CAREFREE HOMES, INC., Plaintiff-Respondent, v. PRODUCTION CREDIT ASSOCIATION OF MADISON, Defendant-Appellant and Third-Party Plaintiff: WARNKE, and another, Third-Party Defendants.†

*No. 75-817. Submitted on briefs December 1, 1977.—Decided January 3, 1978.*
(Also reported in 260 N.W.2d 759.)

† Motion for rehearing denied, with costs, on March 3, 1978.

542

For the appellant the cause was submitted on the brief of *Denis P. Bartell* and *Ross & Stevens, S. C.* of Madison.

For the respondent the cause was submitted on the brief of *Douglas W. Kammer, S. C.* of Portage.

CONNOR T. HANSEN, J. The facts are not disputed. The third-party defendants, Frederic W. Warnke and Delores R. Warnke, residents of Columbia county, borrowed in excess of $49,000 from PCA. The Warnkes defaulted on the loan, and judgment was entered against them in the sum of $32,954.76 in the circuit court for Columbia county on February 18, 1975. The judgment was properly docketed the same day in the office of the Columbia county clerk of court.

On August 26, 1975, the Warnkes entered into a contract to sell a parcel of land in the village of Pardeeville in Columbia county to a Charles and Elizabeth McCaughey. Approximately six weeks later the McCaugheys assigned their interest in this contract to Carefree Homes, Inc., plaintiff-respondent (hereinafter Carefree).

At the time of this assignment, Carefree had both constructive and actual notice of the PCA's judgment lien against the parcel. Carefree's lawyer had represented the Warnkes in the action which had resulted in the February 18, 1975, judgment and the judgment lien.[1]

Carefree constructed a house on the real estate. During the construction of the house, Carefree's lawyer contacted the lawyers for PCA, seeking a release of the judgment lien. The request was refused.

Carefree proceeded to purchase the land under the sales contract. At a closing held on November 6, 1975, Carefree received a warranty deed in exchange for $4,100. Title fees and expenses were paid, and the net proceeds were paid to superior lienholders, including the Internal Revenue Service, the village of Pardeeville (for special assessments) and the Wyocena branch of the

---

[1] The brief of Carefree on this appeal also states that Carefree received an opinion of title dated October 7, 1975, advising them of the PCA judgment lien.

Bank of Poynette, holder of mortgages on the property. The record contains a letter written by Carefree's lawyer indicating that the total indebtedness superior to PCA's lien was somewhat in excess of $6,000.

Carefree commenced this action seeking a declaration that PCA's judgment lien was no longer valid as against either the land or the house constructed on it. PCA answered the complaint and counterclaimed for foreclosure of its lien.

The trial court acknowledged that PCA had a valid lien against the land at the time of the sale. However, the trial court determined that under the doctrine of equitable conversion, the interest of the Warnkes changed from an interest in real estate to an interest in personalty (*i.e.,* the proceeds) when the land purchase agreement was signed.

This determination was based on the following statement from Church, *Equitable Conversion in Wisconsin,* 1970 Wis. L. Rev., 404, 418:

". . . Thus, one would expect the courts to favor a vendee over the vendor's judgment creditor, whether the vendor's land contract is considered realty or personalty under the judgment lien statutes, . . ."

After quoting this statement, the trial court stated:

"The Court feels that this is a concise statement of the law in Wisconsin and will be applied in this case. The Court feels that Production Credit would not have been in a better position had they commenced and concluded a lien foreclosure action. There is no evidence of fraud; the purchase agreement was made at arms length and the price was reasonable. The only real difference between the situation here and a foreclosure action is that the debtor sold the land rather than the sheriff."

Accordingly, judgment was entered declaring the lien of PCA extinguished as to the parcel of real estate in question, and dismissing the counterclaim. PCA appeals.

The following issues are presented:

1. Is a judgment lien against real property extinguished by a subsequent sale of the property where the proceeds are paid to superior lienholders?

2. Where real property is purchased with actual and constructive knowledge of a judgment lien against the property, does the lien attach to subsequent improvements made by the purchaser?

Carefree concedes that PCA had a valid lien against the real estate in question prior to the conveyance of the land. Carefree further concedes that the "overwhelming" weight of legal authority supports the conclusion that a conveyance of real estate subject to a valid judgment lien does not extinguish the lien.

This court has said:

". . . it is held by the great weight of authority that the lien of a judgment is superior to all conveyances of and liens on the debtor's land which are made or accrue after the judgment lien has been attached. . . .
". . . .
". . . the lien of a judgment attaches to the real property of the debtor at the time of the docketing. Inasmuch as a subsequent conveyance by the judgment debtor does not defeat the lien, purchasers of land must search the record for judgments against the debtor at their peril. . . ." *R. F. Gehrke Sheet Metal Works v. Mahl,* 237 Wis. 414, 421, 422, 297 N.W. 373 (1941); *Eloff v. Riesch,* 14 Wis.2d 519, 111 N.W.2d 578 (1961).

The rule is stated as follows in 46 Am. Jur.2d, *Judgments,* sec. 296, p. 500:

". . . the general rule is that a judgment debtor cannot destroy the lien of the judgment by a subsequent alienation of the property, and, consequently, that a subsequent vendee or grantee of real estate takes the property subject to existing judgment liens thereon. . . ." *See also:* 49 C.J.S., *Judgments,* sec. 488, pp. 941, 942.

Carefree does not dispute this rule, under which the lien would survive unaffected by the sale. However, Carefree argues that in the instant case such a result would be inequitable.

To prevent unjust enrichment of PCA, Carefree argues, the trial court adapted the doctrine of equitable conversion. Under this doctrine, the interest of a vendor of land subject to a land contract is, for certain purposes, treated as personalty, and the interest of the vendee as realty. Although the doctrine apparently developed in cases involving the transfer of property upon the death of a party to a land contract, it has also been applied to ascertain the respective rights of a creditor and debtor where the debtor is a party to a land contract.

Thus, where a debtor enters into a contract to sell real estate and a judgment is thereafter docketed against him, the debtor's interest in the real estate is said to have been "converted" to personalty by the previously entered contract. The land is therefore not considered real property of the debtor to which the creditor's lien attaches upon docketing. *Mueller v. Novelty Dye Works,* 273 Wis. 501, 78 N.W.2d 881 (1956). The equitable interest of a vendee under a land contract existing before a judgment is docketed is thus considered to have been "converted" to realty before the creditor's judgment lien came into existence, and the vendee receives priority over the judgment creditor. *IFC Collateral Corp. v. Commercial Units, Inc.,* 51 Wis.2d 41, 186 N.W.2d 214 (1971).

This application of the doctrine of equitable conversion is of no consequence in the instant case because the PCA judgment was docketed before the land contract was executed. Since the conveyance of legal title does not extinguish a valid judgment lien, it follows that conveyance of land by land contract cannot extinguish a valid judgment lien.

The trial court relied upon a statement in Church, *Equitable Conversion in Wisconsin,* 1970 Wis. Law Rev., 404, 418, that ". . . one would expect the courts to favor a vendee over the vendor's judgment creditor, whether the vendor's land contract is considered realty or personalty under the judgment lien statutes, . . ." The trial court considered this to be "a concise statement of the law in Wisconsin," and to require extinguishment of the lien. The full passage of the cited passage makes clear, however, that the author had reference to cases in which the equitable conversion occurred before the judgment was docketed. The article stated:

". . . [T]he doctrine has, . . . been applied to aid in the resolution of cases dealing with the rights of creditors. In such cases, the courts usually hold that, because of the doctrine, a vendee's land contract interest is realty, and a vendor's, personalty.

"The Wisconsin Statutes provide that a judgment shall, upon docketing, be a lien on the 'real property' of the debtor in the county where docketed. This provision has been at issue a number of times in cases involving debtors with land contract interests. The court's interpretation of the statute has, in part, utilized the doctrine of equitable conversion.

"There are two separate and distinct judgment lien problems that can arise under land contract cases. The first, and the one generally present under the facts of the Wisconsin cases, is whether any lien or interest which a judgment creditor may obtain takes priority over the interest of the other party to the land contract; for instance, whether a judgment docketed against a vendor should become a lien against the rights and interests of the vendee. This question has been presented squarely, and in a series of cases the court has stated that the vendor's judgment creditor does not prevail against the vendee. This result seems unavoidable, with or without regard to the doctrine of equitable conversion. It has long been recognized that both vendor and vendee have an equitable position of security vis-a-vis each other, and, *under the facts of all cases presented, this position was*

*achieved before the interest of the judgment creditor. Thus, one would expect the courts to favor a vendee over the vendor's judgment creditor,* whether the vendor's land contract interest is considered realty or personalty under the judgment lien statutes, *particularly where the vendee has paid the full purchase price before docketing the judgment.* Where only part of the price has been paid, the vendee should be able to acquire the property free of the judgment lien by paying somebody the balance of the price, but there could be an issue concerning whom he should so pay, the vendor or judgment creditor. . . ." Church, *supra,* at 417, 418. (Emphasis added.)

It is apparent from this passage, and from the cases cited by its author, that the statement excerpted by the trial court does not refer to cases in which the lien attaches before the land contract is signed.

Carefree argues that the trial court, in the exercise of its inherent equitable powers, could nevertheless extend the doctrine of equitable conversion to this case to avoid unconscionable results. One difficulty with this argument is that the decision of the trial court does not reflect that the court was departing from previous precedent or fashioning innovative relief, but rather that the court intended to apply what it erroneously concluded was the established law in Wisconsin.

On appeal Carefree does not dispute that under the general legal rule, PCA's lien would not have been extinguished; nor does Carefree argue that equitable conversion has previously been applied under facts similar to those presented here. Rather, it argues that on the facts of this case, the trial court was justified in departing from the general legal rule to prevent unjust enrichment. We find no authority to support such a proposition.

Carefree submits that PCA would be unjustly enriched if its lien were permitted to survive the conveyance. The argument is that the sale was substantially like a foreclosure sale because the proceeds were applied toward the

superior debts; that a foreclosure sale would have extinguished PCA's lien without any return to PCA; and that the instant sale and conveyance should have the same effect. To recognize PCA's lien after this "foreclosure by private sale" would unjustly enrich PCA, it is argued.

PCA argues, however, that this private sale was not tantamount to a foreclosure sale. Thus it contends that to treat this conveyance differently from other private sales, and to permit the judgment debtors to thereby extinguish the junior lien, would be unfair to junior creditors. PCA further asserts that such "private foreclosure" actions would deprive junior creditors of the protections provided by foreclosure statutes, and should not be permitted.

In proceedings to foreclose a senior mortgage lien or a senior judgment lien, a junior lienholder is afforded an opportunity to obtain an assignment of the senior creditor's rights by satisfying the outstanding senior debt. Secs. 815.44, 815.48 and 846.15, Stats. The junior lienholder may then direct the prosecution of the action in a manner calculated to satisfy both the senior and junior debts, either by withholding action in the hope that the value of the real estate will increase, or by having a receiver appointed to collect rents and applying them to the senior debt.

Statutory foreclosure proceedings would also have provided for six weeks of public notice and competitive bidding before the foreclosure sale. Sec. 815.31, Stats. Although it is not disputed that the instant sale was made at arm's length and at fair market value, PCA argues that a higher sales price might have been received if statutory notice and bidding procedures had been followed, and if a one-year statutory redemption period had been required before the sale.

In addition, it has been held that where two creditors have liens on a single piece of real estate, and the senior creditor also holds a lien on other collateral, the junior lienholder may insist, in a judicially supervised sale, that the senior creditor proceed against the other collateral before foreclosing on his lien against the common collateral. *United States v. LeMay* (E.D. Wis. 1972), 346 Fed. Supp. 328; *United States v. Bleser* (E.D. Wis. 1940), 34 Fed. Supp. 653. Thus, if the senior lienholders had liens against other real estate still in the hands of the Warnkes, the senior creditors might have been compelled, in a judicially-supervised sale, to proceed against such other real estate before proceeding against this parcel, leaving equity for junior creditors. *See:* 49 C.J.S., *Judgments,* sec. 488c, p. 943. Moreover, no evidence was introduced to show that the Warnkes were in default on their obligations to the senior creditors, in which case the senior creditors would not have been in a position to foreclose on their liens.

Carefree agrees that "foreclosure by private sale" is undesirable, but argues that PCA has not been injured in the present case. The protections which PCA would have been afforded in a statutory foreclosure sale are abstract and speculative, Carefree insists, and PCA did not attempt to exercise them or bring them to the attention of the trial court.

On the present record it is not possible to determine the extent of any prejudice to PCA. Because the real estate was sold by the unilateral decision of the judgment debtor, and not under judicial supervision, the record does not indicate whether the senior debts were in default, or whether the senior creditors could have been compelled to proceed against other property first.

The real estate in the case under consideration was sold at private sale to a purchaser who had both actual and

constructive notice of the lien of PCA. If we were to hold that such a transaction constituted a "foreclosure by private sale" or a "private foreclosure," as suggested by Carefree, we would contravene and undermine the purposes of the foreclosure statutes, to the prejudice of junior lienholders.

Carefree also argues that PCA made no effort to purchase the rights of prior creditors to protect its interest, and that PCA therefore cannot complain of losing the statutory opportunity to do so. The record does not indicate whether any such efforts were made. Whether or not such efforts were made, PCA may reasonably have believed that its lien would not be extinguished by the sale, in which case there would be no need for such a step. Conveyance of land subject to a judgment lien does not, under established legal principles, affect the validity of the lien. *R. F. Gehrke Sheet Metal Works v. Mahl, supra.* Carefree has not identified circumstances which would justify departure from this rule in the present case.

Carefree acquired the real estate with full knowledge of the existing lien. To permit a private sale to extinguish the lien would be to endorse a new type of foreclosure in which a debtor, without a judicial proceeding, could unilaterally determine the time and manner in which the real estate is sold, and could effectively deprive junior lienholders of the benefits of statutory procedures in a judicial proceeding. Such a procedure would circumvent the foreclosure statutes and would frustrate their purposes.

The conveyance to Carefree did not extinguish the judgment lien of PCA, and we reverse the decision of the trial court.

The second question presented is whether the judgment lien of a creditor (PCA) attaches to improvements made

on the real estate by a subsequent purchaser from the debtor. In this case, Carefree proceeded, despite both actual and constructive notice of the existing judgment lien, to construct a house on the real estate, thereby substantially increasing its value.

Carefree appeals to the "equitable sensibilities" of the court, seeking to protect "its new house, built in good faith (if in bad judgment)" under the "mistaken" belief that it had properly caused the purchase money for the real estate to be disbursed, without knowledge of PCA, to the holders of liens which it believed to be superior to the judgment lien of PCA. Carefree urges affirmance of the judgment of the trial court. We are of the opinion that acceptance of the position of Carefree would introduce a mischievous change in the law and permit a judgment debtor to escape the consequences of a judgment lien with no responsibility to the judgment creditor.

Carefree concedes that under normal circumstances, lien rights perfected of record attach to fixtures subsequently placed upon the real estate. This rule has been adopted in other jurisdictions, particularly when the purchaser has actual notice of the lien. *Cheswick v. Weaver* (Tex. Civ. App. 1955), 280 S.W.2d 942; *Glass v. Ives,* 169 La. 809, 126 So. 69 (1929); *Nixdorf v. Blount,* 111 Va. 127, 68 S.E. 258 (1910); Freeman, *Judgments,* sec. 973, p. 2049. In addition, it has been held that improvements on mortgaged land by a purchaser with actual notice of the mortgage lien inure to the benefit of the mortgage lienholder. *McCoy v. Larson,* 286 Ill. App. 405, 3 N.E.2d 713; 59 C.J.S., *Mortgages,* secs. 330, 396, pp. 456, 560.

Although this rule has apparently never been endorsed by this court, Carefree accepts its general applicability. However, Carefree argues that this case involves unusual circumstances which justify departure from the rule to avoid an unconscionable result. It is argued that by improving the land with full knowledge of the lien, Carefree

produced a windfall for PCA. Because this argument would be equally valid against the cases cited herein, which Carefree acknowledges to reflect the general rule of the law, Carefree is actually arguing for rejection of the rule.

Carefree relies upon a series of cases in which an occupant has improved real estate without knowledge of a valid adverse claim to the land. Under such circumstances, the improver has sometimes been held to have an equitable right to recover the value of the improvements. *Ritchie v. Davis,* 26 Wis.2d 636, 133 N.W.2d 312 (1965) ; *Blodgett v. Hitt,* 29 Wis. 169 (1871) ; *Hardy v. Burroughs,* 251 Mich. 578, 232 N.W. 200 (1930).

However, these cases did not involve an improver with knowledge of the superior title of another person.[2] Here, Carefree had knowledge of the lien.

". . . [I]t has been held that inasmuch as such a purchaser is charged with notice of the lien, he does not come within the rule governing . . . improvements made by one under title believed to be good, and that after acquired equities cannot be asserted against the lien." Freeman, *Judgments,* sec. 973, p. 2049.

Carefree also urges the court to follow the approach of the Uniform Commercial Code. Although the Uniform Commercial Code is not applicable here, it does give security interests in goods which later become fixtures priority over prior interests in the real estate, except to the extent that a creditor with an interest in the realty makes subsequent advances. Sec. 409.313, Stats. Carefree argues that this approach should be extended to structural fixtures exempt from the coverage of the

[2] In *Barrett v. Stradl,* 73 Wis. 385, 41 N.W. 439 (1889), this court did allow recovery for improvements made with notice of a claim of superior title. That case, however, involved adverse possession and was decided under a specific statute allowing recovery in such cases. Sec. 3096, Rev. Stats. 1878.

Uniform Commercial Code. We do not accept this argument.

Finally, Carefree argues that a creditor ought not to be able to levy upon improvements which never belonged to the debtor. The basis of this argument is that to extend the lien to the improvements would give the creditor a greater interest than the debtor had. It is true that a judgment becomes a lien only upon such interest in realty as the debtor had in the land when the judgment was docketed, or as he acquires prior to expiration of the lien. *Musa v. Segelke & Kolhaus Co.*, 224 Wis. 432, 272 N.W. 657 (1937). However, at the time this judgment was docketed, the Warnkes held the real estate in fee simple absolute, so that there is no question that the improvements are embraced within the estate to which the lien attached.

It appears this court has never passed upon the question whether a lien against real estate attaches to improvements made by a subsequent purchaser who has actual knowledge and notice of the lien. None of the authority cited by either party is clearly dispositive. The equities in a case such as the instant one are divided. A party who proceeds to build on land subject to a lien, in disregard of the lien, can have only a limited claim to sympathy. Nevertheless, the potential windfall to the judgment lien creditor, whose rights were ignored by the debtor and the purchaser, is substantial.

We conclude that the facts of this particular case dictate that the court endeavor to afford equitable relief to the respective parties. PCA argues it has the legal right to exercise its lien rights against the real estate and the improvements placed upon it by the purchaser. On the other hand, Carefree suggests that PCA refund the $4,100 purchase price of the real estate, whereupon Carefree would deed the property to PCA upon receiving fair

value of the improvements added to the real estate. Neither suggestion produces an equitable result.

We therefore reach the conclusion that the judgment lien of PCA was not extinguished by the conveyance to Carefree. However, under the facts of this case, upon the exercise of the judgment creditor's lien rights by PCA, Carefree is entitled to an equitable right to recover the reasonable value of the improvements it has caused to be placed upon the real estate.

*By the Court.*—Judgment reversed.

† Motion for rehearing denied, without costs, on March 3, 1978.